American Zinc Company of Illinois, Appellee, v.
Anthony Vecera et al., Appellants.

Term No. 49M17.

524

Opinion filed September 27, 1949.
Released for publication October 26, 1949.

ELSON & COTTON, of Chicago, for appellants;
EUGENE COTTON, of Chicago, of counsel.

POPE & DRIEMEYER, of East St. Louis, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The defendant, Local Union Number 82 of the International Union of Mine, Mill and Smelter Workers (hereafter called the Union), and five individual members of said Union, including its president, appeal from an order of the circuit court of St. Clair county which adjudged them in contempt of court for violating an injunction issued by said court, and which fined the Union $1,000 and each of the individuals $100.

The appellants contend that the petitions for rule to show cause, which resulted in the order, were defective in form, that some of the individual defendants were not named as parties in the original complaint, that the evidence does not show they "had that knowledge of the injunction which is a requisite for a finding of contempt," that the Union is an unincorporated association and not subject to legal proceedings as an entity, that no wrongful intent was proved against the Union "acting either through the totality of its membership or through any official action," and that the fines levied were excessive.

The procedure and principal facts relevant to this inquiry are as follows: American Zinc Company filed a complaint for injunction on September 8, 1948, alleging that its employees were on strike and its plant was picketed; that it owned equipment which required constant attention to prevent serious damage and destruction, including furnaces which had to be supplied with fuel and kept at high temperature or they would be ruined, that it had on hand valuable supplies belonging to government agencies, that the Union and its members and officers were barring access to the plant and equipment; and prayed for a temporary and permanent injunction to enjoin such acts. Named as defendants were the Union and a number of persons, described as officers and members thereof, both individually and as representatives of the members. Of the individuals appearing in this appeal, the complaint specifically named Vecera and Fernandez; among others named was one Mike Starr, hereafter mentioned.

A motion for temporary injunction was filed on the same day, and notice of hearing thereon was given the Union and some of its members and officers. Pursuant thereto, a hearing was held, at which the Union was represented by counsel, and some of the members attended in person, and testified in opposition to the motion.

The appellant, Fernandez, there testified that he was a member of the strike committee of the Union, which had set up headquarters near the company's plant, and had provided a tent at the plant gates for the convenience of members on picket duty. Another witness was Mike Starr, who stated that he was vice president of the Union and acting as president in the absence of Vecera who was president. Vecera was temporarily absent, attending a meeting of the International Union.

At the conclusion of the hearing, the court ordered a writ of injunction to issue. The sheriff's return shows personal service of the writ September 10, upon the vice president, the recording secretary and. the financial secretary of the Union, also upon two persons called International representatives, also upon a number of individual members of the Union, including Fernandez. Copies were also posted on the various gates to company property.

On September 14 the injunction was violated. On September 20 a copy of the injunction and order was mailed by the company to each of its 800 employees. On September 22 the injunction was again violated. These are the undisputed facts:

On the 14th, a locomotive operated by railroad officials approached to a point fifty feet from the company's gates. Three of the appellants, Fernandez, Marvich and Weber, stood between the rails. Railroad officials requested them to move, but they declined. The engine advanced to their position, but they sat upon the rails and refused to permit entrance to the company's property. On September 22 the locomotive was admitted to the property, but when it pulled a string of cars to the gate, the appellants, Vecera and Rangel, sat upon the rails and declined to permit removal of the cars, and the engine departed without them. It is not denied that the acts occurred, nor that they were violations of the injunction; but it

is asserted the acts were not wilful nor made with knowledge of, and intent to violate, the injunction.

Other evidence of knowledge and intent (which is the only factual issue presented) includes the following: There is testimony by railroad and company officials that, on the 14th, Fernandez, Marvich and Weber were told, in the presence of other striking employees, that they were violating the injunction; that their replies were loud, angry and profane; that for about two hours thereafter, they continued to bar progress of the locomotive, and it was then withdrawn.

It was also shown that some of the copies of the writ and order mailed on the 20th, were sent by registered mail, and return receipts appear in evidence, from defendants' attorneys, also from Fernandez, Weber and Marvich, also from Robert Hollowwa, a representative of the International Union, who was present with Vecera and Rangel on the 22nd when removal of cars was prevented. There is also testimony that, on this second occasion, Vecera and Rangel were warned by an official of the railroad, that penalties could accrue for violation of the court order, that Vecera replied it didn't matter about that, and refused to permit removal of railroad cars.

There is evidence that the Union, immediately after the first violation, called for a mass meeting of strikers and citizens. A notice was issued calling for a meeting and parade, to be held in the evening of the 17th, to protest "Cold-Blooded Murder Attempts." In connection therewith, there was a mimeographed letter, purporting to be signed by the three appellants involved in the first violation, mentioning that the company tried to move cars "over our bodies" and stating that citizens and the Union were calling a meeting the 17th to "protest this brutal treatment." The Union's news report states that the meeting was held on the 17th and was attended by a crowd of 2,000.

The wide distribution of Union literature is thus attested.

Other publications of the Union were introduced in evidence, some of them containing references to Taft-Hartley Law, scabs, injunctions, strike breaking, etc. There are indications that news of the injunction must, of necessity, have been common knowledge.

The first contempt hearing was initiated by the filing of a sworn petition, which referred to applicable provisions of the injunction, recited the acts of Fernandez, Marvich and Weber, in detail, and specified time and place, alleged the acts were in violation of the injunction, and prayed that the Union and the named individuals be ruled to show cause why they should not be held in contempt of court for violating its injunction. The court ruled the defendants to appear September 20. On that date the defendants appeared by counsel, and the three individuals were personally present. Counsel moved for a continuance to October 1. The court allowed the motion upon the express condition that there should be no further violations.

Following the second violation on September 22, a second petition with supporting affidavits was filed, the petition being similar in form to the first, but alleging the subsequent acts and adding other individual names, including Vecera and Rangel. Defendants were duly ruled to appear and show cause, and they appeared by counsel and moved to dismiss the two petitions. The motion was denied. Hearings proceeded on several days, at which voluminous evidence was introduced in support of the petitions, and the witnesses were cross examined by defense counsel. The defense offered no testimony in reply, but did file affidavits by each individual; all except Fernandez deny personal knowledge of the injunction, and all assert that they acted as individuals only, and not for the Union. After the hearings were concluded, the

court discharged the rule as to some defendants and dismissed them, but entered a finding of contempt with penalties above mentioned, against the Union and five individuals who bring this appeal.

After examining and considering the evidence in the lengthy record, above summarized, this court finds and holds it is a fact established by the weight of the evidence, that the named individual defendants, together with the Union, its officers, agents and attorneys, had actual knowledge of the injunction, and intentionally violated it. The evidence amply justified the chancellor in finding all of the appellants guilty of wilful contempt.

Upon the propositions of law that were presented, the authorities hereafter cited appear decisive.

In support of the point that the petitions for citation must allege defendant's knowledge of the injunction, appellants cite *People v. Nelson,* 226 Ill. App. 333, which involved an original action for contempt, in which case the pleading and order must contain a complete statement of all the elements of contempt. Also cited is *McCauley v. First Trust & Savings Bank,* 276 Fed. 117, which deals with criminal contempt. These decisions are not in point. The case before us is a civil contempt proceeding, ancillary to an injunction suit, and therefore is "in all its procedure essentially a civil chancery proceeding, conforming itself, in its pleadings, character and quantity of proof required, and in its course through the appellate tribunals, to rules and practice applicable to other chancery proceedings." *Hake v. People,* 230 Ill. 174, at 193. It is not even necessary that a petition be filed, the alleged contempt may be brought to the attention of the court merely by filing affidavits setting out the facts, and, if a petition is filed, it need not have the particularity of an indictment, and is sufficient if it apprises the defendant of the charge made. *Franklin Union No. 4 v. People,* 220 Ill. 355. From

these rules, it is apparent that the petitions and affidavits filed in this case, the substance of which we have already stated, were sufficient to apprise the defendants of the charge made, and are not defective for omitting words required in indictments, such as wilfully, knowingly, intentionally, etc.

■ ■ All persons having notice of an injunction are required to observe it. *Hoeffken v. Belleville Trades & Labor Assembly,* 229 Ill. App. 28. A person who participates in acts prohibited by injunction may be committed for contempt, although he is not a party to the litigation nor named in the order granting the injunction. *Fansteel Metallurgical Corp. v. Lodge 66 of Amalgamated Ass'n of Iron, Steel & Tin Workers,* 295 Ill. App. 323; *Sloan v. People,* 115 Ill. App. 84; *O'Brien v. International Ladies Garment Workers Union,* 214 Ill. App. 57.

■ ■ Appellants cite cases holding that a union, being an unincorporated association, is not subject to suit. The cases cited pertain to actions at law and are not applicable to contempt proceedings. It has been repeatedly held that a union is subject to contempt proceedings. "The Union is a juridicial entity. It is not excused from liability for its acts by reason of the fact that it is a voluntary unincorporated association." *Maywood Farms Co. v. Milk Wagon Drivers Union of Chicago, Local 753,* 316 Ill. App. 47. Even if it were an error to enter the decree against the union, "it does not follow that the decree was a nullity or that the association could violate the injunction with impunity . . . the association is amenable to the court and the law for any violation of it." *A. R. Barnes & Co. v. Chicago Typographical Union No. 16,* 232 Ill. 402. Other cases holding a union, though unincorporated, is amenable to punishment for contempt: *Anderson & Lind Mfg. Co. v. Carpenters' District Council,* 226 Ill. App. 532; *Boston Store of*

*Chicago v. Retail Clerks Protective Ass'n,* 216 Ill. App. 428.

 A union acts through its officers and agents; obviously, that is the only way it can act. It is responsible for those acts even if not expressly authorized. *Anderson & Lind Mfg. Co. v. Carpenters' District Council,* 226 Ill. App. 532. The Supreme Court of the United States has ruled: "It is true of a union as of an employer that it may be responsible for acts which it has not expressly authorized or which might not be attributable to it on strict application of the rules of respondeat superior." *Milk Wagon Drivers' Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.,* 312 U. S. 287, 85 L. Ed. 836. In the case before us, it is clear that the Union authorized, not only the strike, but the picket line, with a union headquarters in control, abetting, condoning and encouraging acts in violation of the injunction; Mike Starr, the vice president called for the mass meeting with a notice which referred, not only to "murderous tactics" of the company, but specifically named the three pickets, appellants herein, who blocked the switch engine from the plant, and spoke of the "heroism of our three pickets," one of whom was a member of the strike committee of the Union; and on the second offense, the Union's president, Vecera, went on the line in person, and ordered that no cars be allowed to pass. As was aptly stated by the chancellor, "The Court would stultify itself to hold that the local union did not know and was not supporting the violation complained of."

 In fixing a penalty for contempt of court, it must be made sufficient to vindicate the authority of the court, and of law, it must also inhibit further violations, and serve as a warning to others. A reasonable discretion must be allowed in weighing these factors. The union and its pickets refrained

from physical assault, and, though they must have realized their blockade might cause damage, still they refrained from any direct attempts to damage or destroy. The chancellor considered these facts, and upon that basis, decided against imprisonment as a penalty, imposing only the fines mentioned. The fines appear quite conservative in amount, the penalties are less than some which have been sustained in cases cited in this opinion. We hold that they are not excessive.

None of the points relied upon as grounds for reversal can be sustained, and the order and judgment of the circuit court is affirmed.

*Order affirmed.*

BARDENS, P. J., and CULBERTSON, J., concur.