PASCHEN CONTRACTORS, INC. *et al.*, Plaintiffs-Appellees, *v.* THE REVEREND CURTIS BURRELL *et al.*, Defendants-Appellants.

(No. 54422;

First District (2nd Division)—September 25, 1973.

Stanley Bass, Marshall Patner, and William Foreman, all of Chicago, for appellants.

Warren C. Ingersoll, R. R. McMahan, and Michael Davis, of Lord, Bissell & Brook, of Chicago, for appellees.

William W. Brackett and Paul E. Goldstein, both of Chicago for *amicus curiae.*

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an interlocutory appeal by defendants to review an order that granted plaintiffs a preliminary injunction. Four building construction corporations and two associations of persons engaged in the building construction industry filed a complaint that sought injunctive relief against 13 individuals and 11 voluntary associations. During this appeal, we granted American Civil Liberties Union, Illinois Division, leave to file a brief *amicus curiae.* The issues presented require us to decide whether the injunction order is invalid. We will first summarize the material facts.

## I.

Plaintiffs' complaint alleged that from July 28 to August 13, 1969, the day it was filed, defendants and persons unknown had conspired, and by threats, intimidation, coercion, and violence, had endeavored to force plaintiffs to meet defendants' demands for increased employment of minorities in the construction industry. It was alleged that in furtherance of this conspiracy, defendants took steps to force members of the two plaintiff associations to violate, breach or rescind their collective bargaining agreements with various building trade unions in Cook County, Illinois, and thus force member-contractors to violate, breach or rescind existing subcontracts with white subcontractors and enter into subcontracts with unidentified and unknown black subcontractors.

As examples of defendants' overt acts, plaintiffs alleged that between July 28 and August 7, 1969, on five different dates and at eight locations, defendants caused large groups of male Negroes, numbering sometimes as many as 300, to go upon construction sites, cause disturbances and intimidate the employees of some of the plaintiffs in order to shut down

construction projects. Plaintiffs alleged that the projects were of great monetary value; that as a result of defendants' conduct, they lost large sums of money in wages, they suffered great injury and the community in which the projects were located suffered great damage. Plaintiffs alleged that they did not have an adequate remedy at law. They prayed for an injunction and for "* * * other and further relief as is necessary and proper." On the day the complaint was filed, plaintiffs moved for a preliminary injunction without notice.

The trial court, however, ordered notice served on defendants. When, on Thursday, August 14 plaintiffs' motion was called, three lawyers appeared representing some of the defendants. Each requested an opportunity to study and answer the complaint. The lawyer for one defendant, the Woodlawn Organization, categorically denied that his client had done any of the things alleged in plaintiffs' complaint. After considering the requests, the trial judge ruled that plaintiffs' allegations were serious enough to warrant an immediate hearing. Plaintiffs then called ten witnesses and in the course of their testimony had 10 exhibits admitted into evidence. Defendants called one witness, Rev. Curtis Burrell, whose testimony closed the hearing. The trial court then granted plaintiffs' motion and issued the preliminary injunction. On Monday, August 18, 1969, defendants made a motion to vacate the injunction order. The motion was denied. Then, on plaintiffs' request, without any supporting evidence, the trial court amended the injunction order, making it applicable to defendants "* * * each of them, and their attorneys, agents, representatives and members, or any other person or groups of persons, or organizations, acting in concert with, acting in sympathy with, or seeking to further the aims of defendants, or any of them * * *."

Neither defendants nor the *amicus* questions the adequacy of the evidence on which the trial court relied for its grant of the preliminary injunction. They do, however, question the validity of the injunction order. They contend that both as to subject matter and persons, its terms are vague and overbroad. They argue that the order, because of its vagueness and overbreadth, infringes on their rights to freedom of expression guaranteed by the First Amendment to the United States Constitution. Therefore, defendants conclude, the preliminary injunction order is invalid.

Plaintiffs defend the validity of the injunction order, contending that the trial court properly exercised its discretion in granting the preliminary injunction. They argue that the injunction order is explicit and clear, both as to its terms and as to its breadth and is as adequate as was required by the evidence. Plaintiffs argue that because the evidence showed defendants were engaged in mass picketing, protests and demon-

strations accompanied by violence, the preliminary injunction order is valid. We resolve the issues presented and settle the competing contentions by reference to settled principles of constitutional and statutory law.

## II.

■■ Picketing, marching, demonstrating and protesting involve elements of speech and conduct. (*Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc.* (1968), 391 U.S. 308, 313, 20 L.Ed.2d 603, 88 S.Ct. 1601; compare *Edwards v. South Carolina* (1963), 372 U.S. 229, 9 L.Ed.2d 697; 83 S.Ct. 680.) These forms of conduct constitute methods of expression, and if peaceful and orderly, fall well within the rights protected by the First Amendment to the United States Constitution. (See *Shuttlesworth v. City of Birmingham* (1969), 394 U.S. 147, 152, 22 L.E.2d 162, 89 S.Ct.2d 935; *Gregory v. City of Chicago* (1969), 394 U.S. 111, 112, 22 L.Ed.2d 134, 89 S.Ct. 946.) However, the rights protected by the First Amendment are neither unlimited nor immune from control. See *Kovacs v. Cooper, Judge* (1949), 336 U.S. 77, 85, 93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608.

■■ For example, the First Amendment does not afford the same type of freedom to those who communicate ideas by conduct such as patrolling, marching and picketing on streets and highways as it affords to those who communicate ideas by pure speech. (*Cox v. Louisiana* (1965), 379 U.S. 536, 555, 13 L.Ed.2d 471, 85 S.Ct. 453.) When expressive conduct takes the form of mass demonstrations, parades, or picketing on public streets and sidewalks, the prevention of public disorder becomes an important object of legitimate state concern. (*Walker v. City of Birmingham* (1967), 388 U.S. 307, 316, 87 S.Ct. 1824, 18 L.Ed.2d 1210.) Such conduct can be controlled by the injunctive power of state courts. See *Milk Wagon Drivers' Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc.* (1941), 312 U.S. 287, 85 L.Ed. 836, 61 S.Ct. 552, 132 A.L.R. 1200.

Mass picketing, protests and demonstrations accompanied by violence, obstruction of ingress and egress, threats, intimidation and coercion are restrainable. (*Ossey v. Retail Clerks' Union,* 326 Ill. 405, 158 N.E. 162; *Meadowmoor Dairies, Inc. v. Milk Wagon Drivers' Union of Chicago No. 753,* 371 Ill. 377, 21 N.E.2d 308; *General Electric v. Local 997 United Automobile Workers of America,* 8 Ill.App.2d 154, 130 N.E. 2d 758.) "Civil liberties, as guaranteed by the constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses." (*Cox v. New Hampshire* (1941), 312 U.S. 569, 574, 85 L.Ed. 1049, 61 S.Ct. 762, 133 A.L.R. 1396.) Therefore, to the extent that defendants en-

gaged in mass picketing, protests and demonstrations accompanied by violence, they could be enjoined. See *Youngdahl v. Rainfair, Inc.* (1957), 355 U.S. 131, 2 L.Ed.2d 151, 78 S.Ct. 206.

■■ The injunction, however, must conform to standards of specificity. It should be so worded that the party enjoined may know from a reading of the order what he is restrained from doing. (*Roesch Enamel Range Co. v. Carbine,* 247 Ill.App. 248.) The order must be complete in the details of its prohibition or direction; it must be so clear that what the court intends is easily discernible. (*D. W. Evans v. Alvanley Johnston,* 300 Ill.App. 78, 20 N.E.2d 841; *cert. denied,* 309 U.S. 662; *Hoffman v. Hoffman,* 59 Ill.App.2d 459, 208 N.E.2d 579.) If it restrains the exercise of First Amendment rights, it must be couched in terms that will accomplish constitutionally permitted objectives and those required by public order. A state may not employ means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. (*Shelton v. Tucker* (1960), 364 U.S. 479, 488, 5 L.Ed.2d 231, 81 S.Ct. 847.) Even fashioning of the order, that is, who prepares it, is important where First Amendment rights are effected. "The participation of both sides is necessary for this purpose. Certainly, the failure to invite participation of the party seeking to exercise First Amendment rights reduces the possibility of a narrowly drawn order, and substantially imperils the protection which the Amendment seeks to assure." *Carroll v. President and Commissioners of Princess Anne* (1968), 393 U.S. 175, 184, 21 L.Ed.2d 325, 89 S.Ct. 347.

■■ Here, the injunction order was prepared by plaintiffs' lawyers in anticipation that it would issue without notice to defendants, and without a hearing. Although the trial court refused to issue an injunction *ex parte,* only minor modifications appeared in the draft of the order that was presented to the court after it heard plaintiffs' motion. The order does not set forth the reasons for its issuance, as required by section 3—1 of the Injunctions Act of 1874 (Ill. Rev. Stat. 1969, ch. 69, par. 3—1). It does say, "* * * it clearly appearing from specified facts shown by the verified complaint that immediate, irreparable and substantial injury, loss or damage will result to plaintiffs * * *," but the "specified facts" are not stated. No act or acts of the defendants are described. It is said in the order that "* * * according to said Complaint, the acts complained of have caused personal injury * * *," but the acts are not described; instead, the injunction refers back to the complaint for details of locations and places where it shall have application. This is an obvious violation of the statutory requirement that an injunction shall be specific in terms; and, not by reference to the complaint or other document, shall describe in reasonable detail the

act or acts sought to be restrained. See Ill. Rev. Stat. 1969, ch. 69, par. 3—1.

■■ · The amended injunction order restrains 13 individuals, 11 voluntary associations, their "\* \* \* members, or any other person or groups of persons, or organization or groups of organizations, acting in concert with, acting in sympathy with, or seeking to favor the aims of the defendants, or any of them \* \* \*." In this State, an injunction is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. (See Ill. Rev. Stat. 1969, ch. 60, par. 3—1.) Therefore, the injunction in this case covers more persons than contemplated by the statute. It purports to sweep within its ambit innumerable members of voluntary associations and others, without number, who may be "\* \* \* in sympathy with or seeking to further the aims of the defendants \* \* \*," although these members may not be "\* \* \* in active concert or participation with them \* \* \*." Membership in an organization, standing alone, will not support civil or criminal sanctions. *Scales v. United States* (1961), 367 U.S. 203, 6 L.Ed.2d 782, 81 S.Ct. 1469.

This injunction is overbroad. (*Centennial Laundry Co. v. West Side Organization*, 55 Ill.App.2d 406, 204 N.E.2d 589, affirmed 34 Ill.2d 257, 215 N.E.2d 443; *Altemose Construction Co. v. Building Construction Trade Council of Philadelphia* (1972), 449 Pa. 194, 296 A.2d 504.) It applies to "\* \* \* any construction activity at the location mentioned in said complaint, or any of them, or at any other location in Cook County, Illinois \* \* \*." It enjoins defendants "from in any manner interfering with or seeking to interfere with or disrupting or seeking to disrupt the contractual relationship between plaintiff or any member of the plaintiffs' associations herein and the various building trade union[s] \*. \* \*." Without mentioning specific acts, it restrains defendants from "in any manner" causing damage or injury to any real or personal property in Cook County, Illinois where work is being performed by any member of the plaintiff associations.

· Finally, without distinguishing between peaceful or nonpeaceful picketing or other conduct, defendants, their attorneys, agents, representatives and members are restrained from in any manner: (a) coercing, intimidating, harassing, threatening obstructing or interfering with the plaintiffs or any members of their associations while they are engaged in construction anywhere in Cook County; (b) interfering with or seeking to interfere with, disrupting or seeking to disrupt the contractual relations between plaintiffs or any member of the plaintiff associations and the building trade unions with which they have collective bargaining

agreements; and (c) picketing at any building or construction site or location in Cook County with more than 6 pickets.

■■ Therefore, this injunction is invalid. It is not enforceable. (*Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.*, 132 Ill.App.2d 833, 270 N.E.2d 200.) Its terms are vague and uncertain. Its blanket prohibitions "\* \* \* are so sweeping and imprecise as to offend constitutional guarantees of speech, press and assembly." (*Centennial Laundry Co. v. West Side Organization*, 34 Ill.2d 257, 215 N.E.2d 443.) The order is reversed.

Reversed.

STAMOS, P. J., and HAYES, J., concur.