NATIONAL METALCRAFTERS, A DIVISION OF KEYSTONE CONSOLIDATED INDUSTRIES, INC., Plaintiff-Appellee, *v.* LOCAL 449, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS AFL-CIO *et al.*, Defendants (Carl Barconi, Respondent-Appellant).

Second District   No. 2—83—0683

Opinion filed June 27, 1984.

400

Angelo P. Bruscato, of Rockford, for appellant.

Robert H. Joyce and Robert C. Long, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellee.

JUSTICE NASH delivered the opinion of the court:

Defendant, Carl Barconi, was found guilty of contempt in the circuit court of Winnebago County for violating a temporary restraining order (TRO) and was sentenced to a 60-day term of imprisonment. He appeals contending (1) that his right to due process was violated as the rule to show cause issued against him failed to advise him of the specific misconduct with which he was charged; (2) that the evidence did not establish that he had prior notice of the TRO which he was found to have violated; (3) that the penalty imposed was excessive; (4) that he was deprived of his right to a trial by jury; and (5) that the trial court did not state whether it found beyond a reasonable doubt that he violated the TRO.

In April 1983, defendant, Local 449, United Automobile, Aerospace and Agricultural Implement Workers AFL-CIO, called a strike against plaintiff, National Metalcrafters, a division of Keystone Consolidated Industries, Inc., after expiration of the parties' collective bargaining agreement. The company filed a complaint for injunction and on May 3, 1983, a TRO was issued which enjoined the union, its officers, unnamed striking employees, and any other persons acting in concert therewith, from

"(1) Physically, through the use of their own bodies or vehicles, blocking the entrance to the Plants and preventing or interfering with ingress and egress thereto of Plaintiff's vehicles, common carrier vehicles and the vehicles of other persons doing business with Plaintiff; threatening damages to employees of

Plaintiff or their property at plant entrances, at the employees' homes, or on the way to and from work."

Defendant, Carl Barconi, was not named in the petition for TRO or in the writ which was issued, nor was he personally served with either document.

Thereafter, on May 19, 1983, the company filed a petition with the trial court for the issuance of a rule to show cause against the union, certain of its officers, and against Carl Barconi to show cause why they should not be held in contempt of court for violation of the TRO. The petition stated that the court had entered a TRO on May 3, 1983, which enjoined mass picketing and violence; while it did not state the nature of the violations committed by Barconi, it did incorporate several affidavits and photographs as describing the separate violations charged against Barconi, the union, its officers and other strikers. The petition did not state whether it sought a criminal or civil contempt finding and it was personally served on Barconi on May 25, 1983.

In the affidavits, Thomas Lawrence described an incident alleged to have occurred on May 11 in which his truck was stopped by pickets when he attempted to drive into the company's plant and a striker jumped upon it, threatened to kill him and tried to pull his arm from the steering wheel. The affidavit did not identify the striker, but it described him and attached to it were copies of photographs of a group of pickets who were present that day at the plant entrance, one of whom was Barconi. An affidavit by Arnold Belcher described a similar incident, which was alleged to also have occurred on May 11, and identified Barconi as the man who jumped upon the running board of his truck as he drove into the company's plant. It stated Barconi yelled obscenities at him and beat on the window on the driver's side with his hand. Belcher identified Barconi from the same pictures referred to in Lawrence's affidavit.

At a hearing on May 27, 1983, at which counsel for Barconi was present, the court issued a rule against him to show cause why he should not be held in contempt for violation of the TRO. The rule did not state when or in what manner defendant was alleged to have violated the TRO, nor did it indicate whether the contempt charged was civil or criminal. The original date of June 9, set for the contempt hearing was continued at the request of counsel for the union and Barconi for the purpose of filing responsive pleadings; none was filed by Barconi. Prior to the contempt hearing, the company was given leave to file supplemental affidavits and exhibits in support of its show cause petition, and they were filed at a hearing on June 6, at

which Barconi's counsel was present.

One of the affidavits then filed was by Roger Bourgord, an employee of the company. He alleged that on May 26, 1983, he and another employee waited at a public parking garage for the company bus to take them to work; the garage was being picketed by a large number of strikers, one of whom was Barconi. Before the two left in the bus, Barconi approached them and stated, "I ought to break both your necks. I'm just the guy to do it." It alleged Barconi also shouted obscenities at them.

Evidentiary hearings were held on June 15, 16 and 23, 1983, on the separate rules to show cause against Barconi, the union and its officers. Many witnesses were called by the company who testified to threats and violence against employees, damage to employee property and mass picketing at the plant which blocked ingress and egress. While most of the testimony concerned conduct which did not involve Barconi, three witnesses were called by the company to testify as to his claimed violations of the TRO. Company employee Arnold Belcher testified that at 9 a.m. on May 11 he was driving a semitruck towards gate No. 4 at the company's plant. As he reached the gate he slowed the truck because the path was blocked by a group of pickets. Barconi then jumped up onto the fuel tank on the driver's side of the truck, hit the window on that side with his fist, and called Belcher a "sorry mother fucker." Defendant rode on the truck for 30 to 40 feet before he jumped off as it went through the gate. Thomas Lawrence testified about a similar incident which occurred one hour later that same day. Lawrence, a driver for a common carrier which did business with the company, was attempting to drive his truck into the same plant gate when he also was stopped by strikers blocking the road. Before he could proceed, Barconi opened the driver's door and jumped onto the truck's running board, grabbing Lawrence by the left arm. When Lawrence advised defendant he was part of management, defendant told him to get out of there. As Lawrence started to move the truck forward, Barconi grabbed his left arm with both hands twisting it back and forth as the two men struggled. Lawrence stated he avoided being pulled out of the truck and that during the struggle Barconi threatened to kill him if he entered the plant. When Lawrence then drove forward through the gate he stated that Barconi jumped clear. As a result of this occurrence, Lawrence sought medical attention for a bruise and cut on his left arm and hand. He notified the police and signed a criminal complaint against Barconi which was pending at the time of the contempt hearing.

Roger Bourgord testified, in similar terms as stated in his earlier

affidavit, that he had been threatened by Barconi while he waited in the Metro Centre Concourse parking garage for the company bus to take him to work. He quoted Barconi as saying to him and another employee, "I ought to break both your necks and I'm just the guy to do it." After uttering obscene words Barconi left.

Union president Stanley Meyer was called by the company as an adverse witness. He testified that he was present in court when the TRO was issued on May 3 and had then received a copy of it. He further stated that during the strike the union held weekly membership meetings and, at least one of them, he advised the members present of the TRO and urged them to obey it. While the witness assumed Barconi had attended the meeting where the TRO was discussed, he could not say for sure. The day after the TRO was issued Meyer went down to the picket line and advised the strikers present of its terms; he did not observe Barconi on the picket line at that time.

Jerry Field, union vice-president, was also called as an adverse witness and testified that each of the union's five picket captains had been advised of the terms of the TRO and instructed to advise the pickets at the plant of those terms. One of the picket captains was among a group of pickets, which included Barconi, who were photographed at gate No. 4 of the plant on May 11, approximately 1½ hours before the altercation involving Barconi.

Barconi did not present any evidence at the hearing. The trial court dismissed the rule to show cause against the two union officers in their individual capacities and found both the union and Barconi in contempt for having violated the TRO. The trial court did not state whether its contempt findings were civil or criminal and noted as to Barconi that he had received notice of the TRO May 3, 1983, and violated it on May 11, by interfering with entry into the plant of trucks driven by Lawrence and Belcher, and also violated it when he threatened Bourgord on May 26. Barconi was thereafter sentenced to 60 days in the county jail.

On July 12, 1983, Barconi filed a motion to reconsider and reduce the sentence. It alleged that there was no evidence he had actual notice of the TRO prior to actions for which he was found in contempt and that the sentence was excessive. At the hearing of this motion, his counsel argued that the contempt finding had been criminal, not civil contempt, and that the evidence did not establish Barconi's actual knowledge of the existence of the TRO beyond a reasonable doubt. The motion was denied and Barconi appeals.

Before addressing the issues raised we must first determine whether the finding of contempt was criminal or civil. Barconi argues

it was criminal, the company urges we find he was held in civil contempt, and the trial court did not explicitly characterize its finding as either civil or criminal contempt.

■■ ■ Our supreme court in *Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 208-09, 357 N.E.2d 477, quoting from *People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 173 N.E.2d 417, defined and distinguished civil and criminal contempt as follows:

" 'Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as *sui generis*, and may partake of the characteristics of both. [Citations.] Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. [Citations.] These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. [Citation.] A further guide may be found in the purpose of punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of *In re Nevitt*, (8th Cir.) 117 F. 448, "he [the contemnor] carries the key of his prison in his own pocket." 21 Ill. 2d 407, 409-10.' "

As a further distinction, it has been held that civil contempt occurs when the contemnor fails to do that which the court has ordered, while criminal contempt consists of doing that which has been prohibited. (*Aurora Steel Products v. United Steelworkers* (1981), 94 Ill. App. 3d 97, 100, 418 N.E.2d 492.) Reviewing courts have often stated that where the penalty imposed is solely punitive, and not to coerce or obtain future compliance with a court order, the contempt finding would be considered criminal; a definite term of incarceration, which denies the contemnor the "keys to his cell" because it does not provide for release upon compliance with the court's order, has been held to bar a finding of civil contempt. *O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 512, 356 N.E.2d 551; *People v. Gholson* (1952), 412 Ill. 294, 299, 106 N.E.2d 333; *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 676-77, 447 N.E.2d 891; *Aurora Steel Products v. United Steelworkers* (1981), 94 Ill. App. 3d 97, 101, 418 N.E.2d 492.

■■ Applying these rules, we conclude Barconi was convicted of criminal contempt. In its findings, the trial court referred to his past

violations of the TRO and noted they constituted a pattern of intentional violation of that order. Reference to a contemnor's past actions as deliberate and intentional violations of a court order, when a definite sentence of incarceration is imposed, demonstrates that he was found in criminal contempt. (*Hoga v. Clark* (1983), 113 Ill. App. 3d 1050, 1059, 448 N.E.2d 196.) While the company argues that the contempt should be construed as civil, we note that it advised the trial court at the contempt hearing it had initiated the proceedings against the union and Barconi as a "friend of the court" and not for company benefit. Also, in arguing for a contempt finding, counsel for the company advised the court it was not pursuing this matter for anything done to the company, but for Barconi's violation of a court order. It is apparent, as to Barconi, the company did not seek a civil contempt finding and sentence in the trial court.

I

■ Barconi contends first that prior to the contempt hearing he was not adequately advised of the conduct alleged to be in violation of the TRO. He notes that the rule to show cause does not state the facts upon which the violation was based nor did it specify whether the rule was for civil or criminal contempt, only advising him that he was charged with contempt for violation of the TRO.

As Barconi's conduct occurred outside the presence of the court, it is clear he was charged with indirect criminal contempt, and due process requires that prior to the hearing he be informed of the charges by information, notice, or rule to show cause and be given a reasonable opportunity to defend against the charges. (*Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 210, 357 N.E.2d 477; *People v. Javaras* (1972), 51 Ill. 2d 296, 300, 281 N.E.2d 670; *People v. Edwards* (1979), 69 Ill. App. 3d 626, 628, 387 N.E.2d 969.) The description of the charges must be such to enable an alleged contemnor to prepare a defense. *In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 893, 364 N.E.2d 430.

However, Barconi did not at any time challenge the sufficiency of the charges against him or suggest that he could not adequately prepare for a hearing because of lack of knowledge as to their nature. By failing to raise this issue in his post-trial motion, he has waived it. (See *People v. Martin-Trigona* (1980), 94 Ill. App. 3d 519, 521-22, 418 N.E.2d 763.) In any event, the argument lacks merit. The affidavits of two of the principal witnesses against Barconi, which closely parallel their later testimony at the hearing, were attached to the company's petition for rule to show cause. Prior to the date of the contempt

hearing, that petition was supplemented by further relevant affidavits and exhibits which were provided to defendant. His reliance upon *People v. Oswald* (1979), 69 Ill. App. 3d 524, 387 N.E.2d 886, is misplaced as it was a city ordinance violation case in which the complaint was held to insufficiently allege the facts of the offense. It is inapposite as the stricter rules for charging a criminal offense do not apply to contempt proceedings, even if they involve criminal contempt. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 410, 173 N.E.2d 417.) Nor is *People v. Vitucci* (1964), 49 Ill. App. 2d 171, 199 N.E.2d 78, apposite, for in that case no rule to show cause was filed and there was no evidence defendant had ever been advised of the nature of the contempt charge against him. Defendant's further reliance upon *United States v. Professional Air Traffic Controllers* (1st Cir. 1982), 678 F.2d 1, is not helpful because the Federal Rules of Criminal Procedure require that the charge in a contempt proceeding specify whether it is being prosecuted as criminal contempt. *Cliett v. Hammonds* (5th Cir. 1962), 305 F.2d 565, 570.

We find Barconi has waived this issue and that his arguments that he lacked adequate notice are without merit.

## II

■ Barconi next contends the contempt finding must be reversed because the evidence failed to establish that at the time of the violations in question he had notice of the TRO and its prohibitions. Because we found that Barconi was convicted of criminal contempt, it is necessary that the evidence establish beyond a reasonable doubt that he knowingly and wilfully violated the TRO. *O'Leary v. Allphin* (1976), 64 Ill. 2d 500, 513, 356 N.E.2d 551; *Aurora Steel Products v. United Steelworkers* (1981), 94 Ill. App. 3d 97, 102, 418 N.E.2d 492; see *People ex rel. Rusch v. Ferro* (1942), 313 Ill. App. 202, 209, 39 N.E.2d 707.

We note first that it is not necessary to prove that a contemnor had been personally served with the TRO after it was issued in order to establish that he had knowledge of it and its contents. It is well settled that one who has actual notice of a TRO or injunction and what it prohibits must abide by it or risk being held in contempt; he need not be served as a party with the actual order if he otherwise learned of it. (*People v. Maslowsky* (1966), 34 Ill. 2d 456, 466, 216 N.E.2d 669, *appeal dismissed* (1966), 385 U.S. 11, 17 L. Ed. 2d 11, 87 S. Ct. 94; *Paschen Contractors, Inc. v. Burrell* (1973), 14 Ill. App. 3d 748, 753, 303 N.E.2d 246; *American Zinc Co. v. Vecera* (1949), 338 Ill. App. 523, 530, 88 N.E.2d 116.) Barconi was found to be in con-

tempt for three violations of the TRO; two separate occurrences on May 11, 1983, when truck drivers entering the company's plant were harassed, threatened and one injured, and a third occurrence on May 26, 1983, when a company employee was threatened. Since Barconi was personally served on May 25, 1983, with the company's petition for a rule to show cause which recited that the court had earlier entered a TRO in which it enjoined mass picketing and violence, there can be no question that he had actual notice of the TRO and its prohibitions on May 26. It is also clear that Barconi's intent to violate the TRO is readily inferable from the nature of his conduct on that day. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 61, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.) We conclude Barconi's knowing and wilful violation of the TRO on May 26 was established beyond a reasonable doubt.

■ However, as to the two violations of May 11, we find that the evidence did not establish beyond a reasonable doubt that on that date Barconi had notice of the TRO. The decisions in *American Zinc Co. v. Vecera* (1949), 338 Ill. App. 523, 88 N.E.2d 116, and *O'Brien v. International Ladies' Garment Workers' Union* (1919), 214 Ill. App. 61, are instructive. In *American Zinc Co. v. Vecera* a union president and four striking members were held in civil contempt. On review, the court concluded that they had actual notice of the temporary injunction before its violation because the union and some of its members were present when the injunction was issued, copies of the injunction were posted at plant gates, the company mailed a copy of the injunction to all of the strikers, the strikers were warned of the injunction by company representatives when observed violating it, and some of the union literature widely distributed during the strike made references to the injunction. The court concluded that defendants had actual notice of the injunction which had become common knowledge. (338 Ill. App. 523, 525-27.) In *O'Brien v. International Ladies' Garment Workers' Union*, there was widespread publicity of the injunction in newspapers, notices of it were posted around the plant and the defendant made a statement during the strike indicating he had heard an injunction had been issued. In view of these facts, the finding of contempt was upheld.

The company argues in the present case that the TRO was of common knowledge to the strikers and that Barconi, therefore, must have had knowledge of it by May 11. There was no evidence, however, that he was present at a union meeting or on the line at a time when pickets were advised of the issuance of the TRO or that he had otherwise learned of it. At most, the evidence showed that Barconi

was on the picket line on May 11 when he was photographed approximately 1½ hours prior to the incident with the first truck. Furthermore, no evidence is seen in the record of wide dissemination of information regarding the TRO by the company, or in newspapers, warnings to strikers or any admission of respondent, as was true in *American Zinc* and *O'Brien*. Unlike those cases, it cannot be said the existence of the TRO was common knowledge in the present case. We conclude that Barconi's conduct of May 11 was not established beyond a reasonable doubt to have been committed in wilful and knowing violation of the TRO.

### III

■ Barconi next argues that his 60-day sentence for contempt was an abuse of discretion as inappropriate to the offense.

When imposing sentence, the trial court noted that he had violated the TRO on three occasions, demonstrating a pattern of such violations. As discussed earlier, we have determined that the evidence was insufficient to support two of the violations for which Barconi was convicted and conclude that the sentence must be vacated and the cause remanded for resentencing for the May 26 violation. We offer no opinion as to whether a 60-day sentence would be appropriate, as a sentence for contempt is within the discretion of the trial court. *City of Chicago v. Chicago Fire Fighters Union, Local No. 2* (1981), 99 Ill. App. 3d 583, 592, 425 N.E.2d 1071; compare *People v. Coty* (1982), 105 Ill. App. 3d 398, 400, 434 N.E.2d 432; *People v. Henderson* (1981), 95 Ill. App. 3d 291, 297, 419 N.E.2d 1262.

### IV

■ Barconi next contends that the finding of contempt must be reversed because he was not afforded a right to have a jury trial. *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 356, 282 N.E.2d 720, is dispositive. Our supreme court there held that only where the penalty imposed for criminal contempt exceeds six months' incarceration or a fine in excess of $500 must the record reflect that the contemnor was afforded a jury trial or knowingly and understandingly waived his right in open court. As Barconi was sentenced to 60 days' imprisonment and was not fined he had no right to a jury trial.

### V

■ Barconi finally argues that the contempt finding must be reversed because the trial court never directly stated what standard of proof it applied in doing so. Under either standard, however, the un-

contradicted evidence is clear Barconi had notice of the TRO prior to May 26, 1983, when he threatened to injure the two employees, in violation of the terms of the TRO. See *Aurora Steel Products v. United Steelworkers* (1981), 94 Ill. App. 3d 97, 418 N.E.2d 492; *Cf. Hoga v. Clark* (1983), 113 Ill. App. 3d 1050, 1061, 448 N.E.2d 196.

Accordingly, the judgment of the circuit court finding Barconi in contempt is affirmed; the sentence imposed is vacated and the cause remanded for resentencing.

Affirmed in part; vacated in part and remanded.

SEIDENFELD, P.J., and UNVERZAGT, J., concur.