MARSHALL B. ROULETTE, Plaintiff-Appellee, v. THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, Defendant-Appellant.

First District (2nd Division)   No. 85—1390

Opinion filed February 18, 1986.

Neil F. Hartigan, Attorney General, of Springfield (Grace Allen Newton, Assistant Attorney General, of Chicago, of counsel), for appellant.

Ronald B. Schwartz, of IIT/Chicago-Kent College of Law, of Chicago, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Defendant was ordered to produce the results of a psychological examination administered to plaintiff as part of his application for employment as a police officer. The psychologist who administered the test and interviewed the plaintiff refused to release this information as ordered and was sentenced to five days in jail for his noncompliance. Defendant now appeals, claiming that the court erred in ordering release of plaintiff's evaluation material.

The plaintiff applied to the Illinois Department of Central Management Services (CMS) for a position as police officer. As part of the application process, the plaintiff was required to undergo a psychological evaluation. One phase of the evaluation consisted of a written test, the Minnesota Multiphasic Personality Inventory (MMPI). During the second phase of the evaluation, the plaintiff was interviewed by psychologist, Dr. James Chandler, who is employed by the Illinois Department of Law Enforcement and acts as a consultant to CMS in screening job applicants. While he interviewed the plaintiff, Dr. Chandler took notes. Then he prepared a written evaluation of the plaintiff's MMPI scores and assessed plaintiff's psychological fitness to en-

gage in police work.

After learning that he was not chosen as a police officer, plaintiff requested CMS to produce all of the documents concerning his application for employment. The defendant, CMS, provided plaintiff with all of the material that he requested, except Dr. Chandler's handwritten notes and an interpretive report of the plaintiff's MMPI results prepared by Dr. Chandler.

Pursuant to the Freedom of Information Act (FOIA) (Ill. Rev. Stat., 1984 Supp., ch. 116, par. 201 *et seq.*), the plaintiff filed an action in circuit court, in which he demanded that the defendant and Dr. Chandler produce the doctor's handwritten notes and the evaluation of plaintiff's MMPI results. Dr. Chandler received a subpoena to appear in court and to produce the foregoing documents. He appeared but refused to produce the requested information because he regarded it as confidential and exempt from inspection under the FOIA. Since he refused to comply with the subpoena, the court sentenced Dr. Chandler to five days in jail. Defendant now appeals from this sentence and from the court's production order.

Defendant contends on appeal that the information requested by the plaintiff is exempt from inspection under several Illinois statutory provisions. First, defendant claims that the FOIA does not require release of this information because examination material is not subject to public scrutiny. Defendant's argument in this regard is persuasive.

The FOIA was enacted in 1984 to provide a statutory mechanism whereby all citizens could obtain full and complete information regarding the affairs of government and the official acts and policies of those who represent them. (Ill. Rev. Stat., 1984 Supp., ch. 116, par. 201.) Pursuant to this purpose, the legislature provided in the Act that government records shall be opened for inspection and copying. (Ill. Rev. Stat., 1984 Supp., ch. 116, par. 203.) However, certain records are exempt from public scrutiny. Among the exempt documents are "test questions, scoring keys and other examination data used to administer an academic examination or determine the qualifications of an applicant for a license or employment." Ill. Rev. Stat., 1984 Supp., ch. 116, par. 207(j).

The documents requested by plaintiff can be characterized as examination data used to determine the qualifications of an applicant for employment. Plaintiff wishes to inspect the State psychologist's handwritten notes. Dr. Chandler took these notes during an oral interview, the purpose of which was to determine plaintiff's suitability for employment. Consequently, these notes are examination data. Similarly, Dr. Chandler's written interpretation of plaintiff's MMPI results is in-

cluded in the category of examination data, since this information was used to determine whether plaintiff was psychologically suited to police work.

Plaintiff contends that the documents in dispute are not exempt from inspection. This is so, according to plaintiff, because they are subjective evaluations and thus do not qualify as examination data under the FOIA. Plaintiff argues that the purpose of the testing exemption is to protect the integrity of the public agency's evaluation process. Examination material must be exempt from inspection because if it were made public, prospective examinees would be able to prepare their answers in advance. It is plaintiff's belief that only objective test material must be kept private because subjective material could not provide a competitive edge to future job applicants.

Plaintiff's argument has some merit, but he fails to take into account the fact that release of the results of a psychological examination could undermine the effectiveness of defendant's hiring process. It is true that an MMPI evaluation is subjective in nature. There are no wrong or right answers, and individual responses are of little consequence in determining the applicant's psychological profile. Rather, the applicant's responses to true/false questions are surveyed, and the pattern of his responses is compared to the patterns of a norming population. This comparison determines the extent to which the applicant possesses certain emotional and affective traits. *McKenna v. Fargo* (D. N.J. 1978), 451 F. Supp. 1355, 1359-60.

Notwithstanding the fact that performance on the MMPI is not measured against an absolute standard, if Dr. Chandler's evaluation of plaintiff's responses were released, future applicants might be able to discern which pattern of responses indicates a certain psychological profile. Furthermore, the information requested by the plaintiff is not simply a summary of his MMPI scores. Plaintiff wishes to inspect Dr. Chandler's own written interpretation of a computerized summary of MMPI results. This information would allow a prospective applicant to determine what pattern of responses Dr. Chandler finds indicative of fitness for police work. Armed with this insight, an aspiring police officer could attempt to tailor his responses on the MMPI so that he appears psychologically able to handle the duties of law enforcement.

Similarly, the release of Dr. Chandler's handwritten notes could undermine the integrity of the defendant's evaluation techniques. This is so because the doctor's notes undoubtedly reveal his assessment of plaintiff's responses to questions posed during the interview. A future applicant could determine from these notes what Dr. Chandler found significant in plaintiff's answers. The applicant could then formulate

his own responses to demonstrate psychological fitness for police work. Even if an applicant failed to guess correctly what responses were appropriate, the purpose of defendant's testing program would be frustrated because the psychologist would be unable to elicit candid and spontaneous responses from the applicant.

■ A review of legislative intent and the statutory scheme of exemptions under the FOIA reveals further that the disputed documents in this case should remain private. During debates in the House, Representative Currie, who sponsored the Bill, noted that the FOIA would "ensure that there is *** accountability to the people, that what we pay our bureaucrats to do for us will be open and available for us to inspect." (House Debates, H.B. 234, 83d General Assembly, May 25, 1983, at 181.) The purpose of the Act is to open agency action to the light of public scrutiny and to protect the public from government "malfeasance" and "misfeasance." (House Debates, H.B. 234, 83d General Assembly, May 25, 1983, at 200-01.) Moreover in the public policy section of the Act as it was finally codified, the legislative intent is stated as follows:

> "[A]ccess [to public records] is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.
>
> This Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any fore-mentioned rights of the people to access to information." Ill. Rev. Stat., 1984 Supp., ch. 116, par. 201.

Allowing the plaintiff's examination material to remain confidential is in keeping with the legislative intent of the FOIA. Plaintiff wishes to inspect personnel documents gathered by CMS in its role as an employer. It is not suggested by plaintiff that this material will expose some covert practice that effects the citizens of Illinois. Consequently, if defendant is permitted to retain its privacy, openness in government will not be diminished. Furthermore, plaintiff does not contend that he wants to view his evaluation material to ferret out malfeasance or misfeasance. Nor does he claim that these documents will help him to discuss issues more fully or make better-informed political judgments. Rather, plaintiff seeks to inspect his psychological evaluation for the purely private reason that his psychological makeup may bear adversely upon his opportunity to obtain police work in the future.

Countervailing the plaintiff's private interest is defendant's interest in maintaining the confidentiality of information communicated to it by its consulting psychologist. As noted in the statement of legislative intent, the FOIA should not be used to disrupt the work of a public agency independent of a right in the public to acquire information. In this case, the work of CMS would be disrupted if it were required to reveal confidential information, and plaintiff has not set forth a public right or interest sufficient to justify such a disruption.

Moreover, the statutory scheme of exemptions under the FOIA indicates that the documents in dispute here should be shielded from public scrutiny. Plaintiff claims that the policy underlying the exemptions in section 7 of the Act is that release of some kinds of information would violate an individual's personal privacy. (See Attorney General Neil Hartigan, A Guide to the Illinois Freedom of Information Act (1984).) According to the plaintiff, since he has consented to the release of his examination material, his privacy is not violated, and the exemptions should not apply.

It is true that some exemptions in the FOIA are designed to protect personal privacy. However, others are designed to protect the integrity of certain essential functions of public agencies. For example, exempt from public inspection are architect's building plans, plans for investigation of crime, valuable formulae produced by a public body, and some documents relating to collective bargaining and real estate purchases. (Ill. Rev. Stat., 1984 Supp., ch. 116, pars. 207(c), (e), (i), (k), (q), (s).) The foregoing exemptions, like the exemption for examination material, are clearly necessary to protect government agencies, and the legislature was obviously aware of this need when it enacted the FOIA.

A second statutory exemption in the FOIA applicable to this situation is the section on personnel practices. A public agency need not produce "information related to the internal personnel rules and practices." (Ill. Rev. Stat., 1984 Supp., ch. 116, par. 207(w).) Dr. Chandler's notes and his interpretation of a job applicant's MMPI results qualify as information relating to defendant's personnel practices. This is so because devices used to screen prospective employees are just as much a part of personnel practices as are documents relating to the management of persons currently employed.

A third exemption available to defendant is one covering trade secrets. The FOIA exempts "[t]rade secrets and commercial or financial information obtained from a person or business where such trade secrets or information are proprietary, privileged or confidential." (Ill. Rev. Stat., 1984 Supp., ch. 116, par. 207(g).) The Illinois legislature

intended that the term trade secret would be construed broadly. The bill's authors included the trade secret exemption because they did not wish to discourage private parties from doing business with the State. (House Debates, H.B. 234, 83d General Assembly, May 5, 1983, at 184.) Moreover, the legislature patterned the Illinois law after the Federal Freedom of Information Act, and Representative Currie declared that case law construing the Federal statute should be used in Illinois to interpret our own FOIA. (House Debates, H.B. 234, 83d General Assembly, May 25, 1983, at 184.) Federal law indicates that a trade secret includes information that would either inflict substantial competitive harm or make it more difficult for the agency to induce people to submit similar information in the future. *General Electric Co. v. United States Nuclear Regulatory Com.* (7th Cir. 1984), 750 F.2d 1394, 1398.

Although Dr. Chandler's evaluation of plaintiff is not a trade secret in the conventional sense, it is confidential information received by a government agency from its consulting psychologist. To disclose this information might discourage the psychologist from providing the defendant with candid evaluations of future job applicants. Since disclosure would have a chilling effect upon defendant's ability to receive similar information in the future, Dr. Chandler's evaluation should be exempt from inspection.

■ A final statutory provision relevant to this controversy is one from the Illinois personnel records act. Under the FOIA, information specifically prohibited from disclosure by any State law is unavailable for public inspection. (Ill. Rev. Stat., 1984 Supp., ch. 116, par. 207(a).) The personnel records act prohibits State employees from viewing any portion of a test document or any material used by their employer for management planning. This private information includes judgments, review documents, comments, or other ratings of the employee. (Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 2010(b), (c).) If an employee, who has a vested interest in a continued association with the State, is forbidden to view tests and evaluation material, then a job applicant, who has no vested interest in State employment, should also be forbidden to inspect his evaluation material. For this reason, plaintiff's request was properly denied.

■ Defendant's next objection on appeal is that the court erred in sentencing Dr. Chandler to five days in jail for failure to produce plaintiff's examination documents. Defendant contends that the court's contempt citation was criminal in nature and unwarranted under the circumstances of this case. Plaintiff characterizes the contempt citation as civil in nature and appropriate to coerce Dr.

Chandler to comply with a court order.

Although the trial court did not declare that its finding of contempt was either criminal or civil, it appears to be civil in nature. This is so because citation for criminal contempt is directed to preserving the dignity of the court, while civil contempt proceedings are used to enforce the rights of private parties and to compel compliance with orders or decrees. *National Metalcrafters v. Local 449* (1984), 125 Ill. App. 3d 399, 405, 465 N.E.2d 1001.

In this case, the court's primary purpose in sentencing Dr. Chandler to jail was to coerce him to turn over the disputed documents. Even when a sentence is for a definite time, as it was here, a contempt charge may be considered civil in nature if the court's main objective was to coerce the contemnor into complying with a court order. However, once the object of the court's coercive measure is no longer in force, then the contemnor should not have to go to jail. (See *Shillitanti v. United States* (1966), 384 U.S. 364, 370-71, 16 L. Ed. 2d 622, 627-28, 86 S. Ct. 1531, 1535-36.) Since there is no need to coerce Dr. Chandler to release plaintiff's examination material, the doctor should not have to serve his five-day sentence.

In light of the foregoing, the judgment of the trial court is reversed.

Reversed.

BILANDIC, P.J., and HARTMAN, J., concur.