THOMAS OSRAN, Plaintiff-Appellant, v. PHILLIP BUS, Executive Director of Kane County Development Department, *et al.*, Defendants-Appellees.—BOARD OF TRUSTEES OF RUTLAND TOWNSHIP *et al.*, Plaintiffs-Appellants, v. THE COUNTY OF KANE *et al.*, Defendants-Appellees.

Second District   Nos. 2—91—0643, 2—91—0652 cons.

Opinion filed March 20, 1992.

Howard B. Levy, of St. Charles, and G. Alexander McTavish, of Myler, Ruddy & McTavish, of Aurora, for appellants.

Gary V. Johnson, State's Attorney, of Geneva, and Julie L. Murphy, of Bullaro & Carton, Chartered, of Chicago (James Bryan Sullivan and J. Patrick Jaeger, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

This matter involves consolidated actions brought against defendants, the County of Kane (County), the Kane County Board of Supervisors, and a Kane County employee. Plaintiffs in one of the suits are nine townships, one municipality, and two private citizens (collectively, Townships), all located or residing in Kane County. Thomas Osran is plaintiff in the other action. All of the plaintiffs seek disclosure of certain documents in the possession of Kane County, the Townships pursuant to a consent decree between themselves and the County, and Osran pursuant to the Freedom of Information Act (Ill. Rev. Stat. 1989, ch. 116, par. 201 *et seq.*).

Early in 1990 the Kane County Board of Supervisors (Board) adopted a policy favoring landfilling over incineration for disposal of the County's solid waste. The Board publicly announced in April 1990 that it intended to acquire property and construct a new landfill of some 2,000 acres on one of five potential sites located in several of the plaintiff Townships.

In mid-May the County let it be known it was ready to pick a site and start acquiring the land. On May 25, three of the Townships filed a complaint (No. 90—CH—0163) requesting that the County be re-

strained from siting the landfill within the County until the County had prepared and received approval of a comprehensive solid waste management plan as required by the Solid Waste Planning and Recycling Act (Solid Waste Act) (Ill. Rev. Stat. 1989, ch. 85, par. 5951 *et seq.*). A similar complaint (No. 90—MR—0162) had been filed previously by a Kane County corporation and its principal stockholder. The two actions were subsequently consolidated. Also, the complaint was amended to add the remaining Townships and municipality.

In July 1990 the parties entered into a consent decree. Under the decree the County was prohibited from taking any further steps toward siting the landfill, or acquiring land for it, until the solid waste management plan was prepared, adopted, and submitted to the Illinois Environmental Protection Agency, as mandated by the statute. The decree also provided that the defendants would produce documents which had previously been requested by the plaintiffs and were subject to disclosure. Some, but not all, of the documents sought by plaintiffs had already been produced.

In August the plaintiffs made a written inquiry regarding production of the remaining documentation. Defendants offered additional materials but added that there remained several "very site specific" exhibits which would not be made available. Plaintiffs then moved for a rule to show cause against defendants, asserting that their refusal to produce the requested records was a violation of the consent decree. Following a hearing on the rule, the court ordered that the documents sought by plaintiffs were not subject to disclosure and, therefore, there had been no violation of the consent decree. The Townships appeal from that order.

Shortly before the Townships filed their complaint, Thomas Osran had submitted two requests to Kane County pursuant to the Freedom of Information Act (Information Act or Act) (Ill. Rev. Stat. 1989, ch. 116, par. 201 *et seq.*) for substantially the same documents as those sought by the Townships. Phillip Bus, the County development director, denied the requests, citing exemptions provided within the Information Act for certain real estate matters (hereinafter, real estate exemption) and for proposals and bids. Osran appealed to the County board chairman, Frank Miller, who upheld the denials. On July 10, 1990, Osran filed a complaint (No. 90—MR—0208) for declaratory judgment seeking to compel disclosure of the documents. Osran's case was ultimately consolidated with the action brought by the Townships.

In September 1990 Osran moved for an *in camera* inspection by the court of the records sought from the County. In October the defendants filed an "Amended and Restated Index of Exempt Rec-

ords," which was a list, including detailed descriptions, of the documents they claimed were exempt. In May 1991 the trial court entered an order indicating that, after a *de novo* hearing and an *in camera* review of the documents, it found the records withheld by the County to be exempt from disclosure under the real estate exemption that the County had relied on. Osran appeals from that order.

The Townships assert that the exemptions in the Information Act cannot be used to preclude disclosure of the records to them because their consent decree with the County provides for discovery of those records. They further argue, along with Osran, that, even if the provisions of the statute could properly be invoked, the records withheld by the County do not fall within any of the exceptions established by the Act. The County responds that the trial court correctly found the real estate exemption to be applicable and that the other exemptions it cited also effectively shield the records from disclosure. With regard to the Townships' discovery argument, defendants posit that the trial court correctly interpreted the consent decree to mean that the County was allowed to assert any legally recognized privilege against disclosure. According to the County, the exemptions in the Information Act constitute just such a privilege. Inasmuch as the effectiveness of all of the parties' contentions depends initially on whether the exemptions established by the Information Act apply to the withheld documents, we will decide that question first.

■ The County indicated on its amended index of exempt records that every one of the records listed was being withheld pursuant to several of the exemptions set forth in the Information Act. However, the trial court made clear in its orders that it relied only on section 7(1)(s) of the Act to find that the documents were exempt from disclosure. That section states:

> "§7. (1) The following shall be exempt from inspection and copying:
>
> * * *
>
> (s) The records, documents and information relating to real estate purchase negotiations until those negotiations have been completed or otherwise terminated. With regard to a parcel involved in a pending or actually and reasonably contemplated eminent domain proceeding *** records, documents and information relating to that parcel shall be exempt except as may be allowed under discovery rules adopted by the Illinois Supreme Court." Ill. Rev. Stat. 1989, ch. 116, par. 207(1)(s).

In its order discharging the rule to show cause against the County, the court found that the documents it had reviewed *in cam-*

*era* "relate to parcels involved in '... reasonably contemplated emminent [*sic*] domain proceedings.' " The final order entered in Osran's case reflects the court's finding that the exhibits "relate to 'real estate purchase negotiations' not yet completed or terminated or to an 'actual or reasonably contemplated emminent [*sic*] domain proceeding.' "

Unlike the trial court, we do not have the undisclosed records themselves to review. However, the index filed by the County, which describes the nature of each document in considerable detail, reflects that the County withheld: aerial photos of proposed sites with names of owners of individual parcels indicated; maps and overlays showing the factors determining the location of the proposed sites; site-specific documents including site maps, road maps, landmark maps, and landfill concept plans; various maps showing property ownership, legal descriptions, and, in some cases, names and addresses of individual owners in proposed sites; and real estate tax information and appraisals of values of parcels in proposed sites. The initial question before us is whether these materials fall within the scope of the section 7(1)(s) exemption. The trial court found that they did. We think the lower court gave the exception to the rule too expansive an interpretation.

■ The purpose of the Information Act is to open governmental records to the light of public scrutiny. (Ill. Rev. Stat. 1989, ch. 116, par. 201; *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 378; *Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 534-35.) The Act facilitates public access to full information regarding the affairs of government (Ill. Rev. Stat. 1989, ch. 116, par. 201) and, thus, fosters governmental accountability and an informed citizenry (*Bowie*, 128 Ill. 2d at 378). As expressed in the Act, it is the public policy of the State of Illinois to encourage the free flow of information from the government to the people. (*Bowie*, 128 Ill. 2d at 378.) The Information Act is to be liberally construed to achieve this goal. Ill. Rev. Stat. 1989, ch. 116, par. 201; *Bowie*, 128 Ill. 2d at 378.

While there is a presumption that public records are open and accessible, the court must be cautious, among other things, about disrupting the functions of government by requiring disclosure beyond what is imposed by law. (Ill. Rev. Stat. 1989, ch. 116, par. 201; *Bowie*, 128 Ill. 2d 373.) This caution is initially established in the Act itself, where it sets forth exemptions to the general rule of disclosure. Those exceptions, however, are to be narrowly read. *Bowie*, 128 Ill. 2d 373; *Baudin*, 192 Ill. App. 3d at 535.

■ Under the Information Act the burden of proof is on the public body to establish that the material withheld is exempt from disclosure. (Ill. Rev. Stat. 1989, ch. 116, par. 211(e); *Hoffman v. Department of Corrections* (1987), 158 Ill. App. 3d 473, 476.) However, a governmental agency may not clothe its records with an exemption from disclosure by bare assertions that the material is exempt. *Baudin*, 192 Ill. App. 3d at 535; *Hoffman*, 158 Ill. App. 3d at 475-76.

According to section 7(1)(s), an exemption from inspection and copying applies to materials relating to "real estate purchase negotiations" or relating to a parcel involved in a "pending or actually and reasonably contemplated" eminent domain proceeding. The County does not maintain that it was involved in actual, ongoing negotiations for the purchase of particular real estate or that there was any relevant condemnation proceeding pending at the time plaintiffs requested documents. In fact, Phillip Bus, Kane County development director, gave deposition testimony that, as far as he knew, during 1990 no offers were extended and no landowners were contacted regarding sale of their land to the County for a landfill. Nor, to his knowledge, had the County board or the solid waste subcommittee authorized discussions with owners about the sale of land for a landfill. Bus further testified that he knew of no real estate condemnations which were actually proceeding at the time Osran made his freedom of information requests. Similar testimony was given by then current County board chairman, Warren Kammerer, at his deposition.

The absence of actual negotiations is not seen by the defendants as fatal to their position, however. Rather, the County claims that the real estate exemption does not require that negotiations must be currently pending. Even if the County was "merely contemplating entering into negotiations" for the purchase of land, according to the County's argument, the exemption would apply. We think defendants overestimate the reach of the statutory exception.

■ We first observe that defendants cite no authority for the position they take. More significantly, the language of the statute exempts materials relating to real estate purchase negotiations. The word "negotiation" is defined as "the action or process of negotiating or of being negotiated." "[N]egotiate," in turn, means "to communicate or confer with another so as to arrive at the settlement of some matter: meet with another so as to arrive through discussion at some kind of agreement or compromise about something." (Webster's Third New International Dictionary 1514 (1986).) Too, the material is exempted only "until those negotiations have been completed or otherwise terminated." (Ill. Rev. Stat. 1989, ch. 116, par. 207(1)(s).) That

sounds to us very much like an indication that negotiations should be underway or, at the very least, imminent, in the sense that the governmental body is, for example, delineating a negotiating strategy, or actually formulating an offer, for a site it wishes to acquire. (*Cf. People ex rel. Ryan v. Village of Villa Park* (1991), 212 Ill. App. 3d 187 (regarding the real estate acquisition exception to the Open Meetings Act (Ill. Rev. Stat. 1989, ch. 102, par. 42)).) At any rate, in our opinion, "real estate purchase negotiations" requires something more than the site analysis and evaluation activity the County was involved in here, as reflected in the descriptions of the undisclosed documents.

Collectively, the County's documents constitute the kind of material that would be needed, initially, in order to locate sites within the County suitable for a landfill. They further reflect the development and analysis of data, and at least some value/cost information, which would facilitate evaluation of each site individually, as well as comparison to the sites to one another. In sum, the records withheld by the County address site selection, not purchase negotiations.

Site selection is a process which precedes acquisition of a specific site, particularly in a case like this where the County is still focused on five possible locations. Judging by the kinds of materials described in the index, the County had not even put together a plan for acquiring the site it ultimately chose, much less engaged in purchase negotiations for any targeted parcels. Consequently, as we see it, the materials are not related to real estate purchase negotiations and, thus, are not exempt from disclosure under the real estate purchase negotiations language of the exemption.

We do not find that the documents could be properly withheld under the "pending or actually and reasonably contemplated" eminent domain proceeding language, either. As we mentioned, the County does not dispute that there is no such proceeding pending. The County instead invokes the "reasonably contemplated" portion of the provision. Placed in context, however, the phrase defendants rely on reads "*actually* and reasonably contemplated" eminent domain proceeding. (Emphasis added.) Moreover, the statute refers to "a parcel" involved in such a proceeding and indicates that materials relating to "that parcel" are exempt. The statutory language appears to contemplate an actual or imminent condemnation of a particular parcel. However, at his deposition, Phillip Bus testified that he thought the County board contemplated condemnation proceedings, although it had not passed any resolutions to that effect. He did not remember if the solid waste subcommittee had passed any resolutions or otherwise expressed an intent to condemn property for a landfill. When asked

about the basis for his opinion that the board was reasonably contemplating condemnation, defense counsel objected on the ground that the information was privileged, and Bus was advised not to answer. Again, Warren Kammerer gave answers similar to Bus' but added that, in his opinion, condemnation was not contemplated for a thousand-acre landfill in western Kane County.

While the County undoubtedly recognizes that it may have to resort to its power of eminent domain in order to acquire the land it seeks, neither the withheld documents themselves nor any other evidence in the record shows that the County is actually and reasonably contemplating acquisition of "a parcel" through condemnation. The County needs only one site, no site has been chosen, and acquisition of the site has not, therefore, been initiated. At best the County can only speculate that it may have to resort to condemnation. In our view, the statute contemplates much closer and more intense focus on condemnation of desired real estate than the vague and speculative assertion made by the County here that it may at some time use its power of eminent domain to acquire one of the five sites scrutinized in the materials sought by plaintiffs. The County did not show the necessary focus. We conclude that the contemplated condemnation language of the exemption does not justify the withholding of the particular documents at issue here.

The County apparently perceives the documents as related to both real estate purchase negotiations and reasonably contemplated condemnation proceedings in the sense that the information contained in the documents provides a sound basis for choosing a site and is one of many steps leading up to the actual purchase or condemnation of a site. However, the language of the exemption—"purchase negotiations" and "actually and reasonably contemplated" condemnation—does not, on its face, include the investigation, fact finding, analysis, and other background activities which must be done before a purchase can be negotiated or a condemnation can be actually and reasonably contemplated. Since the statute directs that they are to be narrowly construed (see *Bowie*, 128 Ill. 2d 373), we do not believe the exemptions should be expanded and extended beyond the language creating them in order to accommodate the withholding of the documents in this case, documents which, in themselves, speak nothing of actual purchase negotiations or of the imminent condemnation of any particular parcel. Thus, as described by the legislature, the exemptions remain "limited exceptions to the general rule that the people have a right to know the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of gov-

ernment and the lives of any or all of the people." (Ill. Rev. Stat. 1989, ch. 116, par. 201.) The trial court should have directed the defendants to disclose the documents.

Although the trial court based its decision only on the real estate acquisition exemption, both Osran and the Townships address the other exemptions claimed by the County for the documents listed on its amended index. The County responds only in a cursory fashion regarding these other exemptions. All of defendants' arguments are, at best, sketchy, highly speculative, or based on unsupported assertions. With one unremarkable exception the arguments are devoid of both authority and citation to the pages of the record relied on, both elements required by Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)). We decline to make defendants' arguments for them and will not address the remaining exemptions.

■ As a final matter we note that the Townships' complaint sought to compel the County's compliance with the Solid Waste Act. We have reviewed that statute and observe that it requires the County to prepare and adopt a solid waste management plan which, among other things, must identify the locations of potential sites for the processing and disposal of waste, or explain how the sites will be chosen. (Ill. Rev. Stat. 1989, ch. 85, par. 5954.) It also provides (see generally Ill. Rev. Stat. 1989, ch. 85, par. 5955) that, prior to adopting a plan, the County must form an advisory committee composed of representatives of the municipalities, citizen organizations, the private waste management industry, recyclers, and others the County deems appropriate. The committee is to review and suggest improvements to the plan while it is being prepared. The County must give written notice to interested members of the public when plan development begins, as well as provide progress reports. Finally, before adoption the plan must be made available for a 90-day period for public review and comment.

The provisions just described leave no doubt that the legislature intended for the public to be informed and to participate fully in every stage of the development of county solid waste management plans. We are confident that, sooner or later, such plans must pinpoint the locations of waste disposal sites. The public participation policy of the Solid Waste Act would certainly seem to suggest that those locations should be made known to the public. With this thought in mind, we cannot ignore the following directive in the policy statement of the Information Act:

"This Act shall be the exclusive State statute on freedom of information, except to the extent that other State statutes ***

or other laws in Illinois might create additional obligations for disclosure of information to the public." (Ill. Rev. Stat. 1989, ch. 116, par. 201.)

Reading this provision together with the Solid Waste Act's policy of encouraging an informed public is persuasive that the materials withheld by Kane County should not be exempt from disclosure.

The Solid Waste Planning and Recycling Act (Ill. Rev. Stat. 1989, ch. 85, par. 5951 *et seq.*) became effective on January 1, 1989, long after the July 1, 1984, effective date of the Freedom of Information Act. Had the legislature intended that the Information Act exemptions should apply even to the kinds of information shared with the public under the Solid Waste Act, it could have incorporated such a limitation, either directly or by reference, into the latter act. It appears to us that, if anything, the legislature did just the opposite. The policy of openness in the Solid Waste Act, which, in fact, is *in pari materia* with the Information Act as a whole, seems to suggest that the scope of permissible limitations on disclosure of information regarding a county's plan for solid waste management should be minimized as much as possible. The decision we reach today is in keeping with the interplay between the two statutes.

Since we have concluded that the documents withheld by the County are not exempt from disclosure under the Freedom of Information Act, we need not address the Townships' further contention that the Information Act exemptions do not render the documents privileged from discovery.

For the reasons stated, the judgment of the circuit court of Kane County is reversed. Under the authority granted to us in Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), we order the defendants to produce and make available to the plaintiffs the documents withheld, as they are listed on defendants' "Amended and Restated Index of Exempt Records," within 14 days.

Reversed.

INGLIS, P.J., and WOODWARD, J., concur.