WILLIAM R. COOPER, Plaintiff-Appellant, v. THE DEPARTMENT OF THE LOTTERY *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—92—2890

Opinion filed September 30, 1994.

1008

COUSINS, J., dissenting.

Sonnenschein, Nath & Rosenthal, of Chicago (Samuel Fifer and Gregory R. Naron, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Deborah L. Ahlstrand, Assistant Attorney General, of counsel), for appellees.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff William Cooper brought an action against defendant Illinois Department of the Lottery (IDL) seeking disclosure of certain information under the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 (West 1992)). The circuit court of Cook County granted summary judgment for defendant and plaintiff appeals. No issues are raised on the pleadings.

Plaintiff submitted a written request for certain records in the possession of defendants to further his study of whether the IDL is living up to its statement of policy: that its "advertising content and practices do not target with the intent to exploit specific groups or economic classes of people." (20 ILCS 1605/7.8a (West 1992).) Specifically, plaintiff requested the following information:

"(1) portions of a media plan developed by Bozell, Inc. (the 'Bozell Plan') to advertise and promote the Illinois State Lottery (the 'State Lottery') for the years 1988 through 1990; (2) a list of all vendors of State Lottery tickets ('Lottery Agents') in the City of Chicago with monthly sales data; and (3) copies of all current (1990) State Lottery publications intended for public distribution."

IDL responded to Cooper's request by stating that: (1) the Bozell plan was not a "public record" within the terms of the Illinois Freedom of Information Act, and would not be disclosed; and (2) agent-specific lottery sales information was proprietary financial information, the disclosure of which could cause competitive harm to agents, and was therefore exempt from disclosure under section 7(1)(g). IDL complied with Cooper's third request. IDL offered as alternative documents the list of all Chicago lottery agents and gross sales information by zip code for fiscal years 1988 to present.

Cooper filed a complaint for injunction against IDL and moved

for summary judgment. IDL responded to Cooper's motion and also moved for summary judgment. The parties' cross-motions for summary judgment were argued before the trial judge with respect to disclosure of the lottery agent sales information. At the time of hearing on the cross-motion for summary judgment, the record shows that Cooper had pared his information request to: (1) annual gross sales data for the geographical location of each Chicago lottery outlet; and (2) details of the Bozell plan encompassing lottery advertising in all media, including when and where it ran and the cost of ad placement (but not ad production). Cooper argued that public policy favored disclosure of the information requested and that no FOIA exemptions applied.

The trial judge ruled in defendant's favor on the ground that vendor-specific lottery sales data were exempt from disclosure as trade secret and financial information that is proprietary or confidential under section 7(1)(g) and as a clearly unwarranted invasion of lottery agents' and taxpayers' privacy under the provisions of sections 7(1)(b)(iii) and (iv) of the FOIA. The court also ruled, after *in camera* inspection, that the "Communications Plan Recommendations" (the Bozell plan) was exempt from disclosure under section 7(1)(r) as recommendations pertaining to the financing and marketing transactions of the public body as well as section 7(1)(g)'s exemption for certain trade secrets and commercial or financial information that is proprietary, privileged or confidential, or where disclosure may cause competitive harm.

We must decide whether the circuit court properly granted summary judgment for defendant because the requested information was exempt from disclosure under the Illinois Freedom of Information Act.

The FOIA provides, in pertinent part:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 1992).

There is a presumption that public records be open and accessible, subject only to exemptions that are to be narrowly construed. (*Car-*

*bondale Convention Center, Inc. v. City of Carbondale* (1993), 245 Ill. App. 3d 474, 476, 614 N.E.2d 539, citing *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 378, 538 N.E.2d 557, 559.) Although section 7 of the Act provides an extensive list of exemptions to disclosure, the burden of proof is on the governmental agency to establish that the documents in question are exempt from disclosure. (*Wayne County Press, Inc. v. Georgia Isle* (1994), 263 Ill. App. 3d 511, 636 N.E.2d 65; *Carbondale*, 245 Ill. App. 3d at 476, citing *Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 535, 548 N.E.2d 1110, 1113.) " 'To meet this burden and to assist the court in making its determination, the agency must provide a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing.' " (Emphasis in original.) (*Carbondale*, 245 Ill. App. 3d at 477, quoting *Baudin*, 192 Ill. App. 3d at 537, 548 N.E.2d at 1114.) "[R]eliance upon self-determination by public officials and public employees as to what should and what should not be disclosed to the public would frustrate the purpose of the FOIA." (*Hoffman v. Department of Corrections* (1987), 158 Ill. App. 3d 473, 476, 511 N.E.2d 759, 761.) The purpose of the FOIA is "to permit the public to decide *for itself* whether government action is proper." (Emphasis in original.) *Washington Post Co. v. United States Department of Health & Human Services* (D.C. Cir. 1982), 690 F.2d 252, 264.

## I

We first address plaintiff's request for the Bozell plan. On review, defendant no longer contends that the Bozell plan is not a public record, as it is clearly within the definition set forth in section 2(c). Rather, defendant contends that this material is exempt under sections 7(1)(g) and 7(1)(r) of the Illinois FOIA.

## A

■ Section 7(1)(g), the "trade secret" exemption, exempts:

"[t]rade secrets and commercial or financial information obtained from a person or business where the trade secrets or information are proprietary, privileged or confidential, or where disclosure of the trade secrets or information may cause competitive harm." (5 ILCS 140/7(1)(g) (West 1992).)

The legislature patterned the Illinois law after the Federal Freedom of Information Act (5 U.S.C. § 552 (1988 & Supp. V 1993)) and case law construing the Federal statute should be used in Illinois to interpret our own FOIA. (*Roulette v. Department of Central Management Services* (1986), 141 Ill. App. 3d 394, 400, 490 N.E.2d 60, citing 83d Ill. Gen. Assem., House Proceedings, May 25, 1983, at 184 (here-

inafter Debates).) Case law construing the Federal statute suggests that information is confidential only if disclosure would either inflict substantial competitive harm on the supplier of the information or impair the recipient agency's ability to induce people to submit similar information to it in the future. (*General Electric Co. v. United States Nuclear Regulatory Comm'n* (7th Cir. 1984), 750 F.2d 1394.) We note that a minor impairment cannot overcome the disclosure mandate of the FOIA. (*Washington Post Co. v. United States Department of Health & Human Services* (7th Cir. 1982), 690 F.2d 252.) "To show substantial competitive harm, the agency must show by specific factual or evidentiary material that (1) the person or entity from which information was obtained actually faces competition; and (2) substantial harm to a competitive position would likely result from disclosure of the information in the agency's records." *Calhoun v. Lyng* (5th Cir. 1988), 864 F.2d 34, 36.

■ The Illinois Lottery, the entity from which the information is sought, does not face competition. Rather, it is a monopoly. In an attempt to circumvent this problem, IDL invokes the interest of Bozell in the ideas and recommendations it developed. However, to the extent that IDL is reluctant to release the disputed material on Bozell's behalf rather than its own behalf, the exemption on which it relies is inapplicable. IDL concedes that section 7(1)(g) was patterned after the Federal FOIA and consistent construction was intended. The purpose of the Federal exemption is "to protect information that a private individual wishes to keep confidential *for his own purposes,* but reveals to the government under the express or implied promise by the government that the information will be kept confidential." (Emphasis added.) (*Benson v. General Services Administration* (W.D. Wash. 1968), 289 F. Supp. 590, 594.) The pleadings and record here are devoid of any reason for the trial court to conclude that the data requested about the Bozell plan were furnished to the lottery in confidence, or that disclosure of the plan would inflict competitive harm on Bozell, the provider. We conclude that the Bozell plan, commissioned and paid for by the IDL, is not the type of confidential business information that section 7(1)(g) exempts. The only difference between this provision in the Illinois FOIA and the Federal FOIA exemption is the addition of the word "proprietary" before the words "privileged or confidential."

Extrapolating from the language difference between the wording of the Federal and State FOIA trade secrets exemption, IDL concludes that Cooper's reliance on *Benson* fails to recognize both the "proprietary" language under the Illinois FOIA and the Federal case law interpretation of "confidential" to include competitive harm or agency difficulty in obtaining such information.

First, IDL asserts that the relevant inquiry is whether Bozell is in competition with other businesses, not whether the Illinois lottery is a monopoly. In *Benson*, the court rejected the GSA's contention that certain appraisal reports it commissioned from a private entity were protected under the Federal trade secrets FOIA exemption, 5 U.S.C. §552(b)(4) (1988 & Supp. V 1993), stating:

> "[T]he exemption is meant to protect information that a private individual wishes to keep confidential for his own purposes. *** The appraisal report, on the other hand, is kept confidential by the appraiser on the client's behalf, not on his own behalf, and the client here is GSA. Thus the exemption does not apply to the appraisal report." (*Benson*, 289 F. Supp. at 594.)

The Illinois legislature has declared "it is our intention that case law interpretations under federal FOIA should guide *** the courts in Illinois" in construing section 7(1)(g) (Ill. Rev. Stat. 1991, ch. 116, par. 207(1)(g) (now 5 ILCS 140/7(1)(g) (West 1992))). Debates, at 184.

The *Benson* court correctly concluded that where the government has commissioned a private entity to prepare a report, it may not invoke its own status as a "client" to withhold the report as "confidential." To conclude otherwise would emasculate the disclosure requirements of the FOIA.

IDL's focus on the word "proprietary" in the Illinois FOIA trade secrets exemption does not weaken the authority of the holding in *Benson*, but rather further supports the logic upon which it is based. IDL assumes that "Bozell has a proprietary interest in the ideas and recommendations it developed," when, in fact, if anyone has a "proprietary" interest in the Bozell plan, it is the IDL, which commissioned and paid for the plan. Unlike the usual section 7(1)(g) case, where a third party's trade secrets are submitted in the course of bidding on a government project or in response to an agency's investigation under its regulatory authority, the "business strategies and information" quoted in IDL's brief at page 22, citing Debates, at 184, are those of IDL and not Bozell. See, *e.g., Orion Research, Inc. v. Environmental Protection Agency* (1st Cir. 1980), 615 F.2d 551; *Timken Co. v. United States Customs Service* (D.D.C. 1981), 531 F. Supp. 194; and *Teich v. Food & Drug Administration* (D.D.C. 1990), 751 F. Supp. 243.

■ IDL's final argument that the Bozell plan is exempt as a trade secret or information of a proprietary, privileged or a confidential nature under section 7(1)(g) is that while there is only one Illinois lottery, there are neighboring State lotteries and multistate lotteries from which the plan should be kept confidential in Bozell's and the Department's interests. This rationale is incomprehensible in light of

the fact that the Illinois Lottery Act explicitly provides that one of the duties of the Director of the Lottery is "[t]o enter into an agreement or agreements with the management of state lotteries operated pursuant to the laws of other states for the purpose of creating and operating a multi-state lottery game wherein a separate and distinct prize pool would be combined to award larger prizes to the public than could be offered by the several state lotteries, individually." (20 ILCS 1605/9(h) (West 1992).) The Act encourages interstate cooperation to the mutual benefit of all rather than fostering exclusionary competitiveness of one State against others.

In summary, IDL has alleged no facts in its pleadings to support its conclusion that disclosure of the Bozell plan will have a chilling effect on receipt of information from advertising agencies it commissions to devise media plans for the lottery.

## B

IDL contends and the dissent agrees that the Bozell plan is exempt from disclosure under section 7(1)(r) of the Illinois FOIA as "[d]rafts, notes, recommendations and memoranda pertaining to the financing and marketing transactions of the public body. The records of ownership, registration, transfer, and exchange of municipal debt obligations, and of persons to whom payment with respect to these obligations is made." 5 ILCS 140/7(1)(r) (West 1992).

While the plain meaning of words used in legislative enactments is a relevant consideration in any statutory interpretation, the intent of the legislature in enacting the Illinois FOIA as expressed in the Act and as particularly set forth above is more cogent in determining the type of information the exemptions were intended to protect from public disclosure.

To this end the legislature has declared that the "Act is not intended to be used to violate individual privacy, nor for the purpose of furthering a commercial enterprise, or to disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information." (5 ILCS 140/1 (West 1992).) The language that immediately follows this declaration, however, is a clear statement from the legislature on the question of how the Act is to be interpreted including the exemption provisions. It states:

> "These restraints on information access should be seen as limited exceptions to the general rule that people have a right to know the decisions, policies, procedures, rules, standards and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. *The provi-*

*sions of this Act shall be construed to this end."* (Emphasis added.) 5 ILCS 140/1 (West 1992).

The legislature has thus clearly expressed that the exemptions from disclosure of information are not to be construed broadly in contrast to the construction unequivocally urged by the dissent.

In response to Cooper's request for those portions of the Bozell plan for several years past concerning the promotion and advertisement of the lottery, and particularly those which would detail ad placement in radio, print and other media, IDL provided media estimates (product ordered summaries and broad time schedules) submitted by Bozell to IDL's financial accounting office. It also provided Cooper with scripts for ads but did not indicate where or when they ran. IDL then refused to disclose that portion of the Bozell plan entitled "Communications Plan Recommendations" under section 7(1)(r) although it is undisputed that this portion of the plan is a statement of marketing objectives, strategies and tactics used by the IDL in promoting the lottery. It is clear, however, from the foregoing statements of FOIA legislative policy that a governmental agency cannot label a document "recommendations" and thereby trigger its exemption under section 7(1)(r) without further analysis. (See *Hoffman v. Department of Corrections* (1987), 158 Ill. App. 3d 473, 511 N.E.2d 759.) The Bozell plan is a statement of IDL policy to which the public is presumptively entitled access consistent with the legislature's expressed intent. This fact is underscored by section 7.8(a) of the Lottery Act, which states:

> "The Board shall establish advertising policy to ensure that advertising content and practices do not target with the intent to exploit specific groups or economic classes of people, and that its content is accurate and not misleading." 20 ILCS 1605/7.8(a) (West 1992).

The dissent asserts that Cooper contends the "marketing" exemption of section 7(1)(r) only applies to "the marketing of government bond issues by public bodies." (266 Ill. App. 3d at 1026.) Cooper's argument is that the part of the Bozell plan he requested has nothing to do with the "financing and marketing transactions of the public body" described in that section and to which it applies. The legislative history surrounding the enactment of this exemption supports his claim.

The Illinois Housing Development Authority (IHDA) lobbied for this exemption because of its concern with the "financial advantage that might be available to a commercial enterprise *** if the Agency's own financial strategy were disclosable." Debates, at 172.

The Governor's statement regarding his amendments (which were

adopted) is even more specific about the thrust of the exemption, indicating it was intended "to protect the competitive position of Illinois public bodies in the financial bond market and to assure confidentiality with respect to financial transactions." Debates, at 9080.

The final statutory language of section 7(1)(r) addresses and underscores the Governor's concerns by exempting from disclosure, "[t]he records of ownership, registration, transfer, and exchange of municipal debt obligations, and of persons to whom payment with respect to such obligations is made." (5 ILCS 140/7(1)(r) (West 1992).) The dissent asserts that the statutory language of section (r) does not on its face require a nexus between the public body's financial or marketing recommendations and bond obligations for this exemption to apply. It states, "it is clear *** that both of the two section (r) sentences can stand alone." (266 Ill. App. 3d at 1027.) The question, however, is not whether they can stand alone but whether they should be so interpreted.

█ The dissent's analysis ignores the term "financing" as used in section 7(1)(r) and the legislative history of this provision, which illustrates the narrow concerns of the General Assembly and then Governor Thompson. An important principle of statutory construction is that "[t]he specific terms in a statute take color from the words surrounding them and must be interpreted in light of the context in which they are used." (*People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679, 498 N.E.2d 262, 265.) Applying this principle to the case at bar and considering the legislative history of section 7(1)(r), the first sentence, containing the words "financing and marketing," must be read in context with the second sentence, discussing municipal debt obligations. Thus "marketing" can only be reasonably construed as referring to marketing of government bond issues by public bodies, and not as excluding from FOIA disclosure any information relating to marketing activities of a public body.

█ Finally, the dissent concludes that even if the Bozell documents were not exempt under section 7(1)(r), disclosure should not be ordered because a foundation for a disclosure order does not exist. This conclusion is based upon the fact that Cooper has not included in the record for review the documents prepared by Bozell which were examined *in camera* at the request of IDL. The content of those documents, however, is not disputed. The affidavit of Lisa Curtis, IDL's FOIA officer, states that the Bozell documents examined *in camera* by the trial court include marketing objectives and strategies and tactics for the lotto game, which she believes to be exempt from disclosure under section 7(1)(r) of the FOIA. IDL in its motion for

summary judgment set forth no specific facts to establish the exemption of this information from disclosure under section 7(1)(r), but simply claims it is exempt, citing the language contained in the statute. The trial court in announcing its decision that the Bozell material was exempt, like IDL did in its pleadings, cited only the language of the statute, but did not set forth any detailed findings concerning what there was about this material that evoked the claimed exemption. IDL's position and the conclusory determination of the trial court that this exemption applied to the material are inconsistent with the settled practice of narrowly interpreting FOIA exemptions. (*Osran v. Bus* (1992) 226 Ill. App. 3d 704, 589 N.E.2d 1027; *Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 548 N.E.2d 1110.) In the absence of detailed findings by the trial court, the inclusion of the Bozell documents in the record would shed no light upon the reasons for the court's determination that the material was exempt.

The dissent cites *General Electric Co. v. United States Nuclear Regulatory Comm'n* (7th Cir. 1984), 750 F.2d 1394, in support of its determination that the Bozell plan materials requested by Cooper are exempt from disclosure under section 7(1)(r) of the Illinois FOIA. *General Electric* involved the trade secret and commercial or financial information exemption of the Federal FOIA. Exemption section 7(1)(r) of the Illinois FOIA has no comparable counterpart in Federal FOIA law.

In *General Electric* (*GE*), the company turned over a report containing detailed plans for a nuclear reactor in response to a subpoena from the Nuclear Regulatory Commission (Commission) under a protective order that the report be made available to the Commission in confidence. Bozell did not give IDL its advertising plan in confidence. It gave the plan to IDL because IDL commissioned and paid for it. In *GE* the company was resisting disclosure and the regulatory commission ruled that the report was not exempt from disclosure. In the case at bar, Bozell has not intervened to resist disclosure of its plan; IDL is resisting disclosure. In *GE*, the company had submitted affidavits to the Commission to show competitive injury, letters suggesting the report was entitled to the exemption and a memorandum from the Commission's own staff economist that disclosure would cause substantial competitive harm to the company's competitive position. In the case at bar, there were no such allegations or submissions to the court *in camera* to suggest Bozell would suffer similar harm if the advertising plan were disclosed. It is noteworthy that in *GE* the court did not overrule the Commission's decision on disclosure but only remanded for that body to state its

specific reasons why the report did not meet the requirements for exemption in light of the company's substantial submissions that disclosure of the details of its nuclear reactor design furnished potential for substantial competitive harm.

Disclosure of the advertising strategy of the Bozell plan will clearly not impair the confidentiality of the IDL's financial transactions nor its competitive position in the financial bond market. Moreover, in discussions about the exemption, the legislature clearly expressed its intention that due to the FOIA's emphasis on "government accountability," this section should not be read broadly to "prevent access to the public of information about the management of the Housing Development Agency, the recipient of grants or bond authorizations from that Agency." (Debates, at 173.) The rationale behind this legislative statement is equally applicable to the Bozell plan documents withheld from disclosure by IDL. IDL reads this specifically focused section to provide a sweeping exemption from FOIA disclosure for anything relating to marketing activities of the public body. This is entirely inconsistent with the declaration of legislative intent set forth above that exemptions from disclosure are to be narrowly construed. In support of its position, IDL offers only conclusory assertions rather than detailed facts justifying the application of the exemption as required by the statute and case law. Therefore, examination of the Bozell plan documents is not required, as IDL has set forth no factual basis in its pleadings or otherwise to support the application of the section 7(1)(r) exemption to prevent disclosure of these materials.

## II

We next address IDL's contention that sales data of each Chicago lottery outlet are exempt from disclosure as: (a) information of a proprietary and confidential nature under section 7(1)(g); (b) personal files and information maintained with respect to licenses by a public body engaged in occupational licensure under section 7(1)(b)(iii); and (c) information required of any taxpayer in connection with the collection of any tax under section 7(1)(b)(iv).

## A

IDL's argument under the 7(1)(g) exemption is that sales data of individual lottery agents are information of a proprietary and confidential nature the disclosure of which may cause competitive harm. To support this argument IDL notes that lottery agents must be involved in a business enterprise other than the sale of lottery tickets to apply to become a lottery ticket sales agent. (20 ILCS

1605/10 (West 1992).) No one may be licensed to engage in business exclusively as a lottery sales agent. It then observes that common experience finds licensees to be gas stations and convenience stores which are in close competition with each other. It opines that competitive harm could be caused to some lottery agents by disclosure of agent-specific sales data identifying high volume ticket sellers as against low volume ticket sellers with the attendant advantages to the more successful sales agents in the negotiation of contracts with common suppliers or in making financial decisions to the detriment of the less successful ones.

■ Cooper, however, is not asking for balance sheets of lottery agents or information unrelated to their role as State agents or trustees of lottery ticket proceeds. Lottery agents are required by law to report monthly lottery sales data to IDL, so it is highly unlikely that public disclosure would impair IDL's ability to obtain this data in the future. (See *National Parks & Conservation Association v. Morton* (D.C. Cir. 1974), 498 F. 2d 765.) In becoming agents, these business people took on a number of responsibilities and liabilities in exchange for the profitable opportunity to attract customers to their businesses as a lottery outlet and to receive commissions and bonuses from the State. IDL has set forth no factual basis to conclude that if Cooper gets sales data from lottery outlets identified by geographical location, no one will desire to become a lottery agent.

IDL's competitive "harm" argument is similarly unpersuasive. *National Parks* provides no support for it. Unlike the facts in *National Parks*, the information Cooper seeks relates only to sale and promotion of lottery tickets and not information related to other business transactions involving lottery agents. The kind of information that IDL expresses concern about as set forth above would not be discerned solely as a result of the disclosure of lottery sales data by geographic location, but is readily observable by the public traffic going in and out of a competitor's store.

### B

Next, we address IDL's contention that the privacy provisions contained in sections 7(1)(b)(iii) and (iv) exempt from disclosure lottery sales data for each agent located within the City of Chicago.

The nub of the controversy on the question of lottery agents' privacy interests centers on Cooper's request that the sales data be supplied for the geographical location of each lottery sales outlet within Chicago (which may consist of a specific street address or a more general address such as that of a shopping center) whereas IDL is willing to supply the information by zip code instead.

■ It is IDL's burden to provide an explanation or justification for its refusal to disclose sales data by geographical location of each outlet on the theory that to do so would constitute a clearly unwarranted invasion of the agents' privacy. (See *Schessler v. Department of Conservation* (1994), 256 Ill. App. 3d 198, 627 N.E.2d 1250.) Moreover, in the case at bar, IDL has not pled that it is unable to supply sales data by geographical location of lottery outlets in the City of Chicago. See *American Federation of State, County & Municipal Employees v. County of Cook* (1990), 136 Ill. 2d 334, 555 N.E.2d 366.

It is difficult to fathom how the protection of the privacy interests of the lottery sales agents in the City of Chicago, who voluntarily enter into a lucrative business arrangement with the State enabling them to earn sales commissions and bonuses on the lottery revenues they generate from geographical outlet identification, are equal to those of the individual identities of minor students in a public school setting who are there pursuant to the compulsory school attendance law that concerned the supreme court in *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 538 N.E.2d 557.

The information Cooper requested on the lottery sales figures has nothing to do with files regarding the "occupational registration, licensing or discipline" of lottery agents within the provisions of section 7(1)(b)(iii) of the FOIA. He does not seek the names of attorneys who are being investigated for possible discipline by the State. (See *David Blumenfeld, Ltd. v. Department of Professional Regulation* (1993), 263 Ill. App. 3d 981, 636 N.E.2d 594.) Nor is the information he seeks "required of any taxpayer in connection with the assessment or collection of any tax." (5 ILCS 140/7(1)(b)(iv) (West 1992).) The lottery ticket sales figures kept by lottery sales agents and conveyed to the IDL are not submitted in connection with payment of a tax; they are submitted in accordance with the terms of the Lottery Act, which provides:

> "All proceeds from the sale of lottery tickets or shares received by a person in the capacity of a sales agent shall constitute a trust fund until paid to the Department ***. *** Sales agents shall be personally liable for all proceeds which shall be kept separate and apart from all other funds and assets and shall not be commingled with any other funds or assets." (20 ILCS 1605/10.3 (West 1992).)

Since lottery agents perform State functions as fiduciaries, the disclosure of their sales data is information in which they have at best an attenuated privacy interest as FOIA section 7(1)(b) states: "The disclosure of information that bears on the public duties of pub-

lic employees and officials shall not be considered an invasion of personal privacy." (5 ILCS 140/7(1)(b) (West 1992).) Moreover, since Cooper has requested neither those portions of the sales data relating to the payment of a sales commission to the vendor nor taxes remitted by the vendor, IDL cannot use the inclusion of the data in the sales proceeds figures as a justification for refusal to disclose the sales information. Instead, it should delete this information and disclose the rest of the sales data to Cooper. See *Welford v. Hardin* (D.C. 1970), 315 F. Supp. 768.

The business addresses of lottery agents are not "personal information." IDL cites *Margolis v. Director of the Department of Revenue* (1989), 180 Ill. App. 3d 1084, 536 N.E.2d 827, in support of its contention that the information is "personal" under section 7(1)(b)(iii) because it is information from which the agents can be identified. It is not, however, the identity of the agent that IDL resists disclosing, it is the lottery sales data for each specific outlet. The agents are already identified because the Lottery Act requires lottery agents to prominently display their license or a copy of it. (20 ILCS 1605/9(d) (West 1992).) Further, the lottery will consider an applicant's ability to promote the lottery in determining whether or not to grant the application. There is ample authority to support Cooper's position that the business locations of lottery agents are not private. See *American Broadcasting Cos. v. Siebert* (1981), 110 Miss. 2d 744, 442 N.Y.S.2d 855.

In *Family Life League v. Department of Public Aid* (1986), 112 Ill. 2d 449, 457, 493 N.E.2d 1054, 1058, the supreme court held that where doctors receive public funds to perform abortions, those who are charged with a duty with respect to such funds "at best have a limited privacy interest in this information." The court ordered disclosure of the names of physicians performing these services as not an invasion of privacy even though allegations of harassment and terrorism were made by the doctors. (See also Ill. Const. 1970, art. VIII, §1; 7 Record of Proceedings, Sixth Illinois Constitutional Convention 2012 (1970).) As against this backdrop, disclosure of the amounts held in trust by the keepers of lottery revenue together with their geographical locations cannot reasonably be considered information "personal" to the agents and thus a clearly unwarranted invasion of their personal privacy.

Finally, in applying the balancing test set forth in *Margolis* to determine whether a "clearly unwarranted" invasion of privacy is threatened by the disclosure of lottery sales information requested by Cooper, we find no such invasion.

■ First, IDL contends that disclosure of the information may

advance Cooper's personal gain. This fact does not disqualify him from being entitled to the information, nor does the sale of his story to a publisher transform his request into the furtherance of a commercial enterprise. (5 ILCS 140/1 (West 1992).) Cooper has maintained that his reason for requesting the information is not only to determine whether IDL is complying with the ad targeting prohibition in the Lottery Act, but also to determine whether empirical data supports the frequently made claims that the poor and disadvantaged spend more *per capita* on lottery tickets than other members of society. We think the public interest in such an accurate empirical study is apparent, and, even if we did not, there is case authority stating that "the balancing of the privacy against the public interest cannot depend on the identity and specific purpose of the party requesting the information." *Painting & Drywall Work Preservation Fund, Inc. v. Department of Housing & Urban Development* (D.C. Cir. 1991), 936 F.2d 1300, 1302.

Secondly, IDL claims that the extent of invasion of privacy due to Cooper's request for lottery sales data by agent location is substantial because agents will be targeted for crime and competitive depredation. Since the lottery agents must promote themselves as such and must also engage in other business, which IDL concedes is largely of the cash sale variety, this contention is ironic. The New York Court of Appeals in *American Broadcasting Cos. v. Siebert* (1981), 110 Misc. 2d 744, 442 N.Y.S.2d 855, in a FOIA case rejected a similar argument with the observation that "[t]he criminal, intent on robbery, does not require the name of the individual who, he observes at the business location, may be in possession of cash." (*Siebert*, 110 Misc. 2d at ___, 442 N.Y.S.2d at 859.) The situation in the case at bar is similar with respect to the lottery agents. As a member of this court observed at oral argument: "You know you can drive around neighborhoods during the day and you can see what's going on, you know. Let's say you can get an idea of the flow of the money for that matter. *** Take you on some tours and you can see what's happening for that matter, and, sometimes, let's say, a little glimpse is worth a thousand words." Cooper's study will not change the fact that the businesses which sell large numbers of lottery tickets are actively promoted and are readily apparent to all—the criminal and law abiding alike.

We further observe that the pleadings of IDL disclose no facts to support a conclusion that lottery agents are more vulnerable to criminal activity than anyone else who is engaged in a business enterprise generating a high volume of cash transactions.

It is not sufficient for IDL to allege that disclosure of the sales information would target its agents for crime and thereby shift the

burden to Cooper to allege specific facts to refute it. This, however, is precisely what IDL and the dissent would require of Cooper to prevail in this case.

Finally, we consider Cooper's alternative means of obtaining the requested information.

■ IDL has throughout this case referred to Cooper's proposed study as one to determine IDL's compliance with the prohibition against advertising targeting in the lottery. Cooper, however, maintains that the purpose of the study is not to determine advertising compliance but rather to provide an accurate empirical analysis of whether those in poor or minority neighborhoods purchase a disproportionate amount of lottery tickets. We accept his statement concerning the thrust of his inquiry, and not IDL's interpretation of his motives for the request, and note also that sales data by geographical location rather than by zip code would greatly facilitate the study. IDL's bare conclusion that the sociological and statistical research Cooper wishes to conduct can be as easily accomplished by studying sales data by zip codes rather than by geographical location of lottery outlet is not determinative. Although IDL might conduct research on the issue as defined by Cooper differently than he would, he is not required to successfully defend his methodology before IDL or this court in order to obtain the information. As stated in *American Federation of State, County & Municipal Employees v. County of Cook* (1990), 136 Ill. 2d 334, 346-47, 555 N.E.2d 361, 366, "A public body may not in Illinois *** provide a public record that does not conform to the request and then force the requester to explain why it will not suffice."

Indeed, we conclude that the specific sales data requested by Cooper would not fit any specific exempt categories under section 7(1)(b)(iii), even under an interpretation more generous to nondisclosure given by the Fourth District Appellate Court. See *Schessler v. Department of Conservation* (1994), 256 Ill. App. 3d 198, 627 N.E.2d 1250.

If the exemptions claimed by IDL and the dissent are to be construed as generously as they urge, the public disclosure of information in the possession of a public body would be largely at the unfettered discretion of that body. This would derogate the purpose of both the State and Federal Freedom of Information Acts and the case law that has construed them. Those acts would thus become a futile legislative exercise because information a public body is willing to disclose has always been publicly available. See *General Electric Co. v. United States Nuclear Regulatory Comm'n* (7th Cir. 1984), 750 F.2d 1394, 1398.

■ Accordingly, for the foregoing reasons defendant has not sustained its burden of showing that the information contained in plaintiff's request is protected from disclosure under any claimed exemption of the Illinois Freedom of Information Act. (5 ILCS 140/1 *et seq.* (West 1992).) The judgment of the circuit court is therefore reversed and remanded with directions to enter summary judgment in favor of plaintiff.

Reversed and remanded with directions.

MURRAY, P.J., concurs.

JUSTICE COUSINS, dissenting:

In this case, after *in camera* inspection and review of the "Communications Plan Recommendations" (referred to as the Bozell plan) (CPR) media-related document, the court ruled that the CPR was exempt from production under section 7(1)(r)'s marketing provisions, as well as section 7(1)(g)'s exemption for certain trade secrets and commercial or financial information. Also, regarding the agents, the trial court found that release of the vendors' specific sales data would be a clear and unwarranted invasion of privacy. In my opinion, the trial court decision should be affirmed. See *Margolis v. Director of the Department of Revenue* (1989), 180 Ill. App. 3d 1084, 536 N.E.2d 827.

At the outset, the majority opinion posits that the defendant's contention on review has changed. This argument is incorrect. Rather, the plaintiff, Cooper, indicated at times during argument that his requests have been undergoing modifications. A substantial portion of the oral argument involved questions asked to clarify Cooper's request regarding the location of lottery vendors.

The majority opinion states "[t]he nub of the controversy on the question of lottery agents' privacy interests centers on Cooper's request that the sales data be supplied for the geographical location of each lottery sales outlet within Chicago (which may consist of a specific street address or a more general address such as that of a shopping center) whereas IDL is willing to supply the information by zip code instead." (266 Ill. App. 3d 1020.) However, contrary to the majority argument, Cooper's complaint seeks specific locations and street addresses. Based on the complaint and communications between the parties, the court order exempts vendors' specific sales data for specific locations. Cooper seeks and the court specifically exempts disclosure by IDL of specific addresses with sales data.

Relative to Cooper's request, his attorney was asked numerous

times whether he was seeking specific addresses. Equivocal responses were given by the attorney until the very end of rebuttal argument. Then, he was again asked: "By address, do you mean specific address?" Answer: "Yes." However, even if Cooper has now modified his request to "geographic locations" (whatever that means), "geographic locations," as such, was not pled before the trial court. Based on the pleadings, documents, and arguments, the trial court decided that Cooper was requesting vendors' specific locations and gross monthly sales. On appeal, we cannot predicate a decision on requests which were not pled and ruled upon in the trial court.

Relative to the background information provided in the majority opinion, I note that the first recorded reference which is included in the record regarding the aim of Mr. Cooper in seeking information from the Illinois Department of Lottery (IDL) appears in a letter dated February 19, 1991, where IDL wrote:

> "If, as Mr. Cooper relates, his aim is to determine whether or not our advertising is targeting minority groups, the by-Zip Code information we have offered will give the most accurate representation of sales within the ethnic and minority areas of Chicago as possible. The individual sales of agents will not enhance such an analysis but, will rather distort possible representative sales within the entire neighborhood. Nonetheless, the request for specific agent sales data is once again denied." (Emphasis added.)

Regarding the CPR, the trial court did not err and its decision should be affirmed for reasons hereinafter stated.

First, contrary to the contentions by the majority, the CPR document is clearly exempt under section 7(1)(r) of the Illinois FOIA, which exempts "recommendations *** pertaining to the financing and marketing transactions of the public body." (5 ILCS 140/7(1)(r) (West 1992).) In both his brief and during orals, Cooper posits that the marketing exemption of section 7(1)(r) applies only to "the marketing of government bond issues by public bodies." In my opinion, the majority errs in agreeing with Cooper's interpretation of the statute. The majority writes:

> "Thus 'marketing' can only be reasonably construed as referring to marketing of government bond issues by public bodies, and not as excluding from FOIA disclosure any information relating to marketing activities of a public body." 266 Ill. App. 3d at 1017.

Section 7(1)(r) exempts the following:

> "(r) Drafts, notes, recommendations and memoranda pertaining to the financing and marketing transactions of the public body. The records of ownership, registration, transfer, and exchange of municipal debt obligations, and of persons to whom payment with respect to these obligation is made." 5 ILCS 140/7(1)(r) (West 1992).

In its brief, IDL makes an exhaustive analysis of this section which disproves the contention that it only applies to "bond issues." Further, it is clear from a reading of this exemption that both of the two section (r) sentences can stand alone. The first sentence pertains to "financing and marketing transactions." The second sentence relates to "records of ownership *** of municipal debt obligations." It is clear that the conduct of the lottery by IDL involves "marketing transactions." It is clear that these marketing transactions are exempt.

In my opinion, the majority also errs in granting summary judgment in favor of Cooper and ordering the trial judge to furnish Cooper "the Bozell plan" documents which the trial court examined *in camera.* I have read the common law record. Even so, I don't know what the trial judge viewed *in camera.* I am not clairvoyant. However, I do know that appellate justices have a duty to review trial court decisions based upon the facts and findings which are found in the common law record. We cannot review a determination without knowing upon what it is based. *General Electric Co. v. United States Nuclear Regulatory Comm'n* (1984), 750 F.2d 1394.

In *General Electric,* the court wrote:

"[W]e cannot review an agency's determination without knowing what it is based on; *** *we are unable to discover 'the basis for the agency determination that the FOIA exemptions are inapplicable.'* ***

*** [W]*we are forced to reverse the district court's judgment and direct that court to remand the matter to the Commission ***."* (Emphasis added.) *General Electric,* 750 F.2d at 1404, quoting *Chrysler Corp. v. Schlesinger* (3d Cir. 1977), 565 F.2d 1172, 1192.

The majority posits that *General Electric* is inapposite. The majority is incorrect. Also, it was Cooper's obligation to move the court to order IDL to provide an index of the records to which access had been denied. See *Baudin v. City of Crystal Lake* (1989), 192 Ill. App. 3d 530, 543, 548 N.E.2d 1110; Ill. Rev. Stat. 1989, ch. 116, par. 211(e) (now 5 ILCS 140/11(e)(West 1992)).

As to the request for vendors' specific sales data, I note that Cooper contends, in particular, that area sales by zip codes will not enable him to make an accurate study in the census tract which includes both Cabrini-Green and the Gold Coast in Chicago. This argument is unconvincing. An instructive case is *Bowie v. Evanston Community Consolidated School District No. 65* (1989), 128 Ill. 2d 373, 538 N.E.2d 557. In *Bowie,* the Illinois Supreme Court remanded the case for determination as to whether students could be identified in classrooms even though the names and sexes of students were deleted and scrambled.

The issue on review is not regarding "geographic locations." The issue on review involves "vendors' specific sales data." I note that the attorney for IDL emphasized in the trial court and on review that "what the Department refuses to give is sales data specifically identified with addresses." I also note that, in making his decision, the trial court judge specifically considered the stipulation by the parties that "vendors do receive a commission for each lottery ticket that they sell." Doubtlessly, vendors' specific sales data has tax ramifications. These data also have other ramifications which must be considered. And, my dissent is further crystalized because the majority in this case gives virtually no consideration to the ramification of increased risks which disclosure poses for lottery agents in high crime areas. As recognized by IDL, not only would agents who are likely to have greater lottery funds on hand be known, but since lottery sales generally reflect the "traffic" attendant to the agents' own commercial enterprises (*i.e.*, gas stations, drug stores, convenience stores), these business also could be targeted. It is my view too that providing "vendors' specific sales data" to a writer for part of a study and public disclosure can unwarrantably and unnecessarily cause some vendors and/or agents to be targeted. See *Margolis*, 180 Ill. App. 3d 1084, 536 N.E.2d 827.

I also note that during oral arguments, a member of this court made the following remark, which has been verified by a review of the tape recording of the oral argument:

> "Is it required that a balancing test to be applied, and the court articulate the reasons why on the facts of this particular case the exemption applies, or is it sufficient just to say well it comes within the broad exemption language and that's sufficient, and I would suggest to you *that might fly in the Fourth District but I don't know that it goes around here*." (Emphasis added.)

For the reasons which I have expressed, it is my view that the decision of the trial court in the case *sub judice* accords with the law enunciated in every relevant published opinion by a court of review in Illinois. See *Blumenfeld, Ltd. v. Illinois Department of Professional Regulation* (1993), 263 Ill. App. 3d 981; *Margolis*, 180 Ill. App. 3d 1084, 536 N.E.2d 827; see also *Ripskis v. Department of Housing & Urban Development* (D.C. Cir. 1984), 746 F.2d 1.